716 F.2d 141
 13 Ed. Law Rep. 262
 Barbara QUACKENBUSH, for herself and on behalf of her infant
son, Jason Gambee, Plaintiff-Appellee,
v.
JOHNSON CITY SCHOOL DISTRICT, and Caspar Rowlind,
Administrator for the Johnson City School
District, individually and in his
official capacity, Defendants-
Appellants.
 No. 691, Docket 82-7695.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 24, 1983.
Decided Aug. 24, 1983.
 
 Ronald R. Benjamin, Binghamton, N.Y., for plaintiff-appellee.
 Edward J. Sarzynski, Binghamton, N.Y. (Hogan & Sarzynski, Binghamton, N.Y., of counsel), for defendants-appellants.
 Elizabeth L. Schneider, Rochester, N.Y. (Statewide Youth Advocacy, Inc., Rochester, N.Y., of counsel, David A. Monroe, Western N.Y., Protection and Advocacy Office for the Developmentally Disabled, Neighborhood Legal Services, Inc., Buffalo, N.Y., Gerald P. Seipp, Serotte, Harasyn, Reich & Goldstein, Buffalo, N.Y., on brief), for amicus curiae.
 Before OAKES, PRATT and WEIS*, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Defendants appeal by permission granted under 28 U.S.C. Sec. 1292(b) from an order of the Northern District of New York, Howard G. Munson, Chief Judge, denying defendants' motion to dismiss plaintiff's complaint seeking damages under the Education of the Handicapped Act, 20 U.S.C. Secs. 1400 et seq. (EHA), the Rehabilitation Act of 1973, 29 U.S.C. Secs. 701 et seq., and the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983. Plaintiff brought the action on behalf of herself and her infant son, Jason Gambee, a handicapped child, seeking damages from the defendant school district and one of its administrators, Caspar Rowlind, who at all relevant times was chairman of the school district's Committee on the Handicapped (COH), for depriving Jason of his federally guaranteed "right to a free appropriate public education". 20 U.S.C. Sec. 1412(1).
 
 THE COMPLAINT
 
 2
 Since the issue before us is whether the court below erred in denying the motion to dismiss, we accept as true, for purposes of the appeal, the facts alleged in the complaint. Those facts and the reasonable inferences to be drawn therefrom can be stated briefly. Jason was placed in a regular kindergarten class in the defendant district in September 1978, although the district then knew or should have known that he was a handicapped child in need of special educational services. Plaintiff Quackenbush, Jason's mother, took no action at that time because district employees told her to wait until the following year. However, during the following year Jason repeated kindergarten, again in a regular classroom setting.
 
 
 3
 Concerned about her son's lack of progress in the second year, Quackenbush had Jason evaluated by a psychologist who recommended that he be classified as learning disabled. A copy of the psychologist's evaluation was sent to the district's COH in April 1980. In June 1980 Quackenbush requested that Jason be reviewed by the COH. Immediately thereafter, defendant Rowlind came to Quackenbush's home with a "parental permission form" which Quackenbush filled in. On instructions of defendant Rowlind, Quackenbush left blank the area to be checked with respect to giving permission to conduct an evaluation of Jason. Rowlind took the form.
 
 
 4
 Although the complaint does not allege what action the school district took on plaintiff's request for special services, we infer that the district took no action whatsoever from that time forward. We also infer from the allegations that the district took no action on the request because Rowlind, without plaintiff's authority, put a check mark on the form in the box indicating that she denied the district permission to conduct an evaluation of Jason. Plaintiff alleges that Rowlind altered the form "for the sole purpose of denying [Jason] the special education he is entitled to." She further alleges that he acted pursuant to a policy of the defendant school district to refuse special education to handicapped children for financial reasons. As a result Jason was denied the special education to which he was entitled, suffered damages to his intellect, emotional capacity, and personality, and was impeded in acquiring necessary training. In addition, plaintiff alleges that she moved to a different school district to get the services Jason needed and that she herself suffered emotional distress.
 
 
 5
 Plaintiff seeks damages under five causes of action: (1) that defendants' failure to properly and timely identify Jason as a handicapped child and to provide him with special education violated plaintiff's rights under the EHA; (2) that defendants' actions violated Jason's rights under the Rehabilitation Act; (3) that defendants' actions, taken under color of law, deprived Jason of his right to "an appropriate public special education" pursuant to a policy of refusing to provide learning disabled children with the special services they require; (4) that defendants' actions created two classes of learning disabled children, those who receive special education and those who do not, thereby depriving Jason of equal protection of the law; and (5) that defendant Rowlind's false and malicious conduct in cheating plaintiff and Jason of their rights violated the constitution.
 
 
 6
 Defendants moved in the district court to dismiss the complaint, arguing that plaintiff's claim that Jason was denied needed educational services did not state a claim under 42 U.S.C. Sec. 1983, that plaintiff failed to exhaust her administrative remedy, and that the EHA provided an exclusive remedial scheme which plaintiff could not circumvent either by moving to another school district or by asserting her claims under Sec. 1983.
 
 DECISION BELOW
 
 7
 The district court denied defendants' motion to dismiss and held that plaintiff had sufficiently alleged claims under Sec. 1983. After noting that Sec. 1983 permits a litigant to recover for the deprivation of any federal right whether rooted in statute or constitution, the district court addressed the deprivations alleged under the EHA, the Rehabilitation Act, and the due process and equal protection clauses of the constitution.
 
 
 8
 As to the EHA, the district court found sufficient the broad assertion that defendants were on notice that Jason had a handicapping condition but did nothing. As to the Rehabilitation Act, the court stated, inaccurately, that the complaint alleged that Jason had been excluded from the public schools solely because of his learning disability. Actually, the complaint does not allege exclusion from the public schools, but only exclusion from "a free and appropriate special education". As to the constitutional claims, the court found, without analysis, sufficient allegations of violations of procedural due process and equal protection guarantees to support a Sec. 1983 action. The district court also rejected defendants' argument that plaintiff was required to exhaust available administrative remedies because it found that plaintiff, having left the school district, had no administrative remedies to exhaust and that damages, the only relief sought by plaintiff, were not available through the administrative process.
 
 
 9
 Finally, the district court addressed defendants' contention that the EHA provides an exclusive injunctive remedy which bars use of enforcement through Sec. 1983. Relying primarily on the "plain language of the statute" that under the EHA the court "shall grant such relief as [it] determines is appropriate", the district court rejected the conclusion of the Seventh Circuit in Anderson v. Thompson, 658 F.2d 1205 (7th Cir.1981), and held that the EHA remedy was neither exclusive nor limited to injunctive relief. On the contrary, the district court held, violation of plaintiff's rights under the EHA may give rise to a cause of action for damages that is enforceable under Sec. 1983. Accordingly, the district court denied defendants' motion to dismiss.
 
 
 10
 On defendants' request, the district court amended its order and certified, pursuant to 28 U.S.C. Sec. 1292(b), that the order involved controlling questions of law as to which there is substantial ground for difference of opinion, and that an immediate appeal would materially advance the ultimate termination of the litigation. The specific legal questions identified were:
 
 
 11
 (a.) whether the [EHA] provides an exclusive private right of action for complaints involving educational services for handicapped students;
 
 
 12
 (b.) whether the [EHA] provides to aggrieved plaintiffs as an exclusive remedy for its violation injunctive relief only, with no right to compensatory damages or attorneys' fees; and
 
 
 13
 (c.) whether administrative remedies need not be exhausted when plaintiffs no longer reside in the defendant-school district.
 
 
 14
 In its order of amendment the district court noted that both the Seventh Circuit in Anderson v. Thompson, and another judge of the Northern District of New York in Davis v. Maine-Endwell Central School District, 542 F.Supp. 1257 (N.D.N.Y.1982), had held that the remedy provided under the EHA is exclusive and limited to injunctive relief only. We granted leave to appeal.
 
 DISCUSSION
 
 15
 We are presented with a problem of statutory construction which focuses specifically on whether Congress intended damages to be an available remedy for the type of violation of the EHA alleged here, and if so, whether those damages are recoverable only in an action brought under 20 U.S.C. Sec. 1415(e)(2), or whether they may be recoverable in an action brought under 42 U.S.C. Sec. 1983. The chief practical difference between the two statutes is that the latter carries with it an express authorization for the recovery of attorney's fees in 42 U.S.C. Sec. 1988, while the former does not.
 
 
 16
 Before focusing upon Congress's intent with respect to remedies, we review briefly the general purpose and structure of the EHA. The Education for All Handicapped Children Act (now the "Education of the Handicapped Act", 20 U.S.C. Sec. 1400(a) (Supp. V 1981)) was enacted in 1975, Pub.L. 94-142, 89 Stat. 773, in response to Congress's concern that "[m]ore than half of all handicapped children in the United States are not receiving an education appropriate to their needs * * * [and that] [o]ne million children * * * are receiving no education at all." H.R.Rep. No. 332, 94th Cong., 1st Sess. 7 (1975). The statute, a successor to the Education for the Handicapped Act of 1970, Pub.L. 91-230, 84 Stat. 119, and the Education Amendments of 1974, Pub.L. 93-380, 88 Stat. 484, was aimed primarily at providing handicapped children with access to public education. Board of Education of the Hendrick Hudson Central School District v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 3043, 73 L.Ed.2d 690 (1982).
 
 
 17
 To accomplish this goal, the EHA provides federal funding to state and local education agencies for educating handicapped children, 20 U.S.C. Sec. 1411, sets conditions for eligibility for the receipt of these funds, Sec. 1412, requires eligible states to submit plans outlining their policies and procedures for compliance, Sec. 1413, and provides for withholding federal funding if the Commissioner of Education determines that the state or local education agency has failed to comply substantially with the eligibility conditions, or with its state plan, Sec. 1416. If a state is dissatisfied with the commissioner's disapproval of its state plan, or other action with respect to the plan, it may seek review of that action in the appropriate circuit court, Sec. 1416.
 
 
 18
 The EHA requires that a local education agency, to be eligible for funding, provide a "free appropriate public education", defined in part as "special education and related services", Sec. 1401(18), to those children who are handicapped within the meaning of the statute, Sec. 1401(1). An "individualized education program" (I.E.P.), Sec. 1401(19), must be developed for each child, and the program must be reviewed and, if necessary, revised at least annually, Sec. 1414(a)(5).
 
 
 19
 At the heart of the statute, and particularly germane to the issues before us, are the procedural safeguards required by Sec. 1415 in the statute's blueprint for state and local programs. Those safeguards encompass both administrative and judicial proceedings. On the administrative level they must include, but are not limited to: the opportunity for a parent or guardian of a handicapped child to examine the child's records and to obtain an independent educational evaluation of the child, Sec. 1415(b)(1)(A); written prior notice to the parent or guardian whenever the school district proposes or refuses to initiate or change the child's identification, evaluation, or placement, Sec. 1415(b)(1)(C); a requirement that, when feasible, parents be informed in their native language of all the procedures available under the section, Sec. 1415(b)(1)(D); and "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child", Sec. 1415(b)(1)(E). A parent who has filed such a complaint has the opportunity for an impartial due process hearing, Sec. 1415(b)(2), and "any party aggrieved by the findings and decision" of that hearing, may appeal to the state educational agency for an impartial review, Sec. 1415(c). Parties to the administrative hearings have the rights to be advised by counsel and by individuals with special knowledge or training in the problems of handicapped children, to present evidence, to confront, cross-examine, and compel the attendance of witnesses, to a record of the hearing, and to written findings of fact and decisions, Sec. 1415(d).
 
 
 20
 A decision at the end of the administrative process is final except for the judicial review authorized by Sec. 1415(e)(2). That judicial review is available to "any party aggrieved by the findings and decision" at the administrative level. Such an aggrieved party may bring a civil action "with respect to the complaint" presented pursuant to Sec. 1415. The action may be brought in state court or in a United States district court, which "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." Sec. 1415(e)(2).
 
 
 21
 In enacting the statute, Congress hoped to assist the states in identifying and evaluating handicapped children and providing them with a free appropriate public education. "The purpose of the pending measure is to ensure that all handicapped children have available to them a free appropriate education * * * and * * * to relieve the fiscal burden placed upon the states and localities." 121 Cong.Rec.S. 37417 (daily ed. Nov. 19, 1975) (statement of Sen. Schweiker); see Board of Education of Hendrick Hudson Central School District v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 3048, 73 L.Ed.2d 690 (1982) ("Congress sought primarily to identify and evaluate handicapped children, and to provide them with access to a free public education"). To achieve this goal, Congress passed what it perceived as "a series of comprehensive and carefully thought out provisions", 121 Cong.Rec.S. 37413 (daily ed. Nov. 19, 1975), (statement of Sen. Williams), which "set forth a comprehensive program to meet the unmet needs of all handicapped children", id. at 37416. Representatives and senators alike believed that the legislation represented a comprehensive and far-reaching approach to providing appropriate educational services for handicapped children. "[T]his legislation * * * will prove to be the long awaited step towards a national program to ensure quality education to all handicapped Americans * * * ". 121 Cong.Rec.H. 37029 (daily ed. Nov. 18, 1975) (statement of Rep. Conte).
 
 
 22
 The procedural protections, in particular, were seen as an important and comprehensive means of achieving the goals of the statute. Representative Perkins, chairman of the House Committee on Labor and Education, spoke of the procedural safeguards as "designed to further the congressional goal of ensuring a full educational opportunity for all handicapped children." Id. at H. 37025. Apparently Congress intended the court to have a significant role in achieving the substantive goals of the statute for it provided that the court may take additional evidence and base its decision "on the preponderance of the evidence". However, in Hendrick Hudson, the Supreme Court rejected a standard of de novo review, saying "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." 102 S.Ct. at 3051.
 
 
 23
 In its attempt to guarantee a "free appropriate public education" to all handicapped children, the EHA establishes substantive rights and procedural safeguards. The substantive right to a free appropriate public education has been interpreted by the Supreme Court to mean
 
 
 24
 personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. Such instruction and services must be provided at public expense, must meet the State's educational standards, must approximate the grade level used in the State's regular education, and must comport with the child's IEP. In addition, the IEP, and therefore the personalized instruction, should be formulated in accordance with the requirements of the Act and, if the child is being educated in the regular classrooms of the public education system, should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade.
 
 
 25
 Id. 102 S.Ct. at 3049 (footnote omitted).
 
 
 26
 It would have been extraordinarily difficult, if not impossible, for Congress to have been more precise in defining the special educational needs of particular handicapped children. Instead, Congress sought through its procedural safeguards to open the channels of communication between the parents of each child and the school administrators with a view toward developing the most appropriate program for each particular child. We thus are presented with an unusually detailed description of the administrative procedures required of a school district, and compliance with those procedural safeguards is an essential step in achieving the statutory goal of a free appropriate public education.
 
 
 27
 We have no difficulty with the question of whether the judicial review contemplated by Sec. 1415(e)(2) is the exclusive means for reviewing a final administrative decision under the EHA. We think it is. Congress provided in Sec. 1415 an elaborate, precisely defined administrative and judicial enforcement system. The communication, cooperation, and exchange of ideas needed to develop a particular child's I.E.P. are greatly facilitated by adherence to the administrative procedures outlined in the statute. On the other hand, permitting separate judicial relief under Sec. 1983 as an alternative to use of the administrative-judicial scheme established in Sec. 1415 would undercut significantly the objectives sought by Congress in enacting the EHA. In these circumstances, we think that the judicial review provided by Sec. 1415(e)(2) is an exclusive remedy that can neither be supplemented nor replaced by an action under 42 U.S.C. Sec. 1983. See Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); CETA Workers' Organizing Committee v. City of New York, 617 F.2d 926, 933-34 (2d Cir.1980).
 
 
 28
 This view, however, does not dispose of the appeal, because the judicial review provided by Sec. 1415(e)(2) is not available in the circumstances alleged here. Plaintiff has not proceeded through the administrative stages; indeed, her complaint is that through a policy of the school district she was deprived of the opportunity to take advantage of the procedural safeguards offered by the statute. She alleges that defendant Rowlind induced her to leave blank the answer to the question of whether she would permit Jason to be evaluated and then, without her authority, substituted a negative answer to the question. In these circumstances, plaintiff is not eligible for judicial review under the EHA because she is not a "party aggrieved by the findings and decision" following an impartial due process hearing in the state educational system. Clearly then, plaintiff is not expressly granted any right of judicial review under Sec. 1415.
 
 
 29
 Nor does the legislative history suggest a particular remedy for interference with the procedural safeguards. However, it is unthinkable that Congress would have intended that a plaintiff such as Quackenbush, who as the case presented itself sought for two years to have the school district provide services, made a direct request for evaluation, and was deprived of that request by school district forgery, should be left without any remedy. Particularly in a statutory scheme such as the EHA where great emphasis is placed upon procedural safeguards, we must assume that Congress intended some kind of relief when, through school district policy or misconduct of school officials or both, a handicapped child is deprived of the procedural safeguards guaranteed by Sec. 1415. Assuming, then, that Congress intended a remedy here, the question remains whether that remedy, which all parties to this appeal assume to exist, is to be implied in Sec. 1415(e)(2), or whether it is to be found in Sec. 1983, which guarantees a citizen relief from state deprivations of federally granted rights.
 
 
 30
 Section 1983 is a general remedial statute aimed at preventing lawlessness by state and local governments. Defendants' deliberate interference with procedural safeguards guaranteed by Congress for the purpose of depriving Jason of special educational services necessary to provide him with free appropriate public education would constitute the deprivation of a right guaranteed under federal law within the meaning of Sec. 1983. Section 1983 is available to enforce both statutory and constitutional rights. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).
 
 
 31
 After examining both statutes as well as the circumstances of this case, we believe and conclude that the better solution is to permit Sec. 1983 to supply the right of action to a plaintiff who has been denied procedural safeguards under Sec. 1415 and who, as a result thereof, has not received the findings and decision following the impartial due process administrative hearing contemplated by Sec. 1415. In Hymes v. Harnett County Board of Education, 664 F.2d 410 (4th Cir.1981) the Fourth Circuit viewed the absence of any prescribed remedy in the EHA for deprivations occurring prior to a final administrative decision as a "lacuna" to be filled by Sec. 1983. Id. at 413. Essentially, we agree with that approach. By limiting relief under Sec. 1415(e)(2) only to parties aggrieved by the findings and decision of the administrative agency, Congress rather clearly disclosed its intention that that section not be used to provide relief for procedural deprivations whose effect was to prevent a handicapped child from ever reaching the stage of a final administrative determination. Because of the availability of Sec. 1983 to remedy such deprivations of the procedural rights granted by the statute, it was unnecessary for Congress to provide a separate scheme of judicial relief for plaintiffs who never reach the stage of "findings and decision" due to defendants' misconduct.
 
 
 32
 In short, the district court did not err in refusing to dismiss, because, as we have interpreted the complaint, it sets forth a cause of action against the school district under Sec. 1983 for compensatory damages based upon its alleged policy to avoid providing expensive special educational services by preventing handicapped children from gaining access to the procedural safeguards guaranteed by the statute. See Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendant Rowlind's conduct, if established at trial as it is alleged, could render him personally liable for both compensatory and punitive damages. Unlike Rowlind, of course, the school district could not be held liable for punitive damages. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).
 
 
 33
 The district court also identified for interlocutory review the problem of whether administrative remedies need to be exhausted by a plaintiff who no longer resides in the school district. While the issue had once been in doubt, the Supreme Court has now ruled that a plaintiff need not exhaust state administrative remedies before bringing an action under Sec. 1983. Patsy v. Board of Regents of State of Florida, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). The lack of an exhaustion requirement, however, helps to focus the nature of plaintiff's grievance. She claims that defendants' conduct deprived her of access to the procedural safeguards that Congress intended be available through the administrative structure. As a result, because Jason was not getting the free appropriate public education to which he was entitled, plaintiff moved to a neighboring district in order to obtain the special services needed to secure him that education. We express no opinion on what damages, if any, plaintiff might be entitled to recover should she prove her allegations. We find it fitting, however, that defendants should be required to respond in damages for those injuries caused by their conduct which deprived plaintiffs of access to the administrative system and procedural safeguards guaranteed to them by Congress. It is equally fitting that defendant Rowlind respond in punitive damages if, for the purpose of depriving Jason of special education services, he falsely recorded on her form that plaintiff did not consent to an evaluation of Jason.
 
 
 34
 Our conclusion is consistent with the result in Anderson v. Thompson, 658 F.2d 1205 (7th Cir.1981), which held that the remedy under Sec. 1415(e)(2) excluded and was inconsistent with Sec. 1983 relief. At issue before the Anderson court was review of the state administrative placement decision. As previously indicated, when the state administrative process has run its course concluding in findings and a decision, we agree that Congress intended the remedy under Sec. 1415(e)(2) to be exclusive.
 
 
 35
 Our decision in Hastings v. Maine-Endwell Central School District, 676 F.2d 893 (2d Cir.1982), is also consistent with our decision today. There, on an appeal from an award of attorney's fees under 42 U.S.C. Sec. 1983, the issue was whether the underlying claim arose under Sec. 1983. Holding that it did, we focused upon the school district's abuse of the due process procedural safeguards accorded to parents of handicapped children:
 
 
 36
 The district court's order granting the injunction stated that the School District had "chosen to abuse the due process procedural safeguards" accorded to parents of handicapped children * * *, and this Court affirmed the injunction, observing that "[t]he present action is not pending under the EHA, but rather is brought pursuant to 42 U.S.C. Sec. 1983 to recover for the asserted violation by the defendants of plaintiffs' due process rights * * *."
 
 
 37
 Id. at 897. Jose P. v. Ambach, 669 F.2d 865 (2d Cir.1982), which recognized a Sec. 1983 action in the context of an EHA claim, is likewise consistent, for there the school district conceded that it had failed to provide the statutory safeguards guaranteed by Congress.
 
 
 38
 As indicated above, this plaintiff has no claim under Sec. 1415(e)(2). Thus, it is unnecessary for us to reach the question of whether damages are available under that section. Similarly, we have not considered any possible overlap between the Rehabilitation Act and the EHA, nor have we probed for possible constitutional violations mentioned in passing by the district court but not included in the Sec. 1292(b) certification of controlling questions of law.
 
 
 39
 The order of the district court is affirmed, and the matter remanded for further proceedings consistent with this opinion.
 
 
 40
 WEIS, Circuit Judge, dissenting.
 
 
 41
 The majority opinion is a persuasive and compelling explanation of why the remedy provided by the Education of the Handicapped Act is the exclusive means for reviewing a final administrative decision. I agree completely with the majority's position that "the judicial review provided by Sec. 1415(e)(2) is an exclusive remedy that can neither be supplemented nor replaced by an action under 42 U.S.C. Sec. 1983."
 
 
 42
 Having arrived at the correct conclusion, however, the majority finds it inapplicable here because the school district's Committee on the Handicapped never acted upon the plaintiff's request for evaluation of her son. The school district's inactivity is assumed to have been caused by the improper action of Mr. Rowlind who, by checking the wrong box on the request form, incorrectly signified that plaintiff withheld permission to have the school district evaluate her child. This conduct was allegedly "carried out pursuant to an unlawful policy of the [school district] to refuse to provide ... special education to handicapped children." By these actions, the majority reasons, the child was "deprived of the safeguards guaranteed by Sec. 1415" and plaintiff is therefore entitled to relief under section 1983.
 
 
 43
 I do not agree that there has been a deprivation in this case such as to justify the application of section 1983. No action taken by Rowlind nor any school district policy identified by plaintiff prevented her use of the administrative procedures set forth in section 1415. I therefore dissent from the decision to permit application of section 1983 in this case.
 
 
 44
 It does not follow that because the plaintiff's request for an evaluation was improperly denied, she was deprived of her means of relief under the Act. The statute provides an express procedure to remedy wrongful actions of a school district or its employees, namely, the filing of an administrative complaint that triggers the right to a hearing.
 
 
 45
 The plaintiff had a right under section 1415(b)(1)(E) to present a complaint "with respect to any matter relating to the ... evaluation ... of the child, or the provision of a free appropriate public education to such child." After a complaint is filed, a parent is entitled to "an impartial due process hearing." 20 U.S.C. Sec. 1415(b)(2). An administrative appeal may be taken from an adverse decision if the original hearing is "conducted by a local educational agency or an intermediate educational unit." Id. Sec. 1415(c). Judicial review is available following completion of the administrative process. Id. Sec. 1415(e).
 
 
 46
 Plaintiff failed to invoke any of these procedures. She chose instead to file an action under section 1983 seeking, not educational benefits, but money damages on the ground that defendants "failed to comply with the provisions of the [A]ct in that they ... failed to provide [the child] with the special education he is entitled to."
 
 
 47
 In Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979), the Supreme Court cautioned that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." The point was made more emphatically in Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981), where the Court adopted language first used in Justice Stewart's dissent in Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 673 n. 2, 99 S.Ct. 1905, 1909 n. 2, 60 L.Ed.2d 508 (1979). "[W]hen 'a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under Sec. 1983.' " See also Bush v. Lucas, --- U.S. ----, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); Guardians Association v. Civil Service Commission of New York, --- U.S. ----, ---- n. 3, 103 S.Ct. 3221, 3223 n. 3, 77 L.Ed.2d 866 (1983) (Powell, J., concurring ).
 
 
 48
 As the majority concedes, the statute in this case provides the type of comprehensive enforcement scheme that precludes an action under section 1983. Instead of seeking relief through the process established by section 1415, however, plaintiff moved from the school district five months after the encounter with Rowlind and brought suit a year later. The failure to use the procedures explicitly provided by statute to remedy actions by school authorities should preclude plaintiff from now obtaining relief under section 1983.
 
 
 49
 Even if defendants delayed plaintiff from proceeding through the administrative process, that would not justify bypassing these procedures altogether. The proper course in such an event would be to seek judicial intervention to expedite an agency determination. See Ezratty v. Puerto Rico, 648 F.2d 770, 777 & n. 11 (1st Cir.1981) (citing Campochiaro v. Califano, No. H-78-64 (D.Conn. May 18, 1978)); see also Stacey G. v. Pasadena Independent School District, 695 F.2d 949, 952, 955 n. 5 (5th Cir.1983). In these circumstances, the district court would have the authority, pursuant to federal question jurisdiction, 28 U.S.C. Sec. 1331, to exercise its equitable powers and direct compliance with the statutory provisions. See Smith v. Lehman, 689 F.2d 342, 345 (2d Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 820, 74 L.Ed.2d 1018 (1983) (federal question jurisdiction to hear claim that Constitution requires hearing before job dismissal); Ellis v. Blum, 643 F.2d 68, 76 (2d Cir.1982) (federal question jurisdiction to compel state compliance with benefit termination provisions of Social Security Act).
 
 
 50
 In Hymes v. Harnett County Board of Education, 664 F.2d 410 (4th Cir.1981), the Court of Appeals for the Fourth Circuit reasoned that because the Education of the Handicapped Act provided no specific judicial relief for violation of the section 1415(e)(3) status quo requirement, section 1983 could be used to enforce that provision pending exhaustion of administrative remedies. Once defendant complied with section 1415(e)(3), the hearings mandated by the Act were assured, and the court viewed further relief under section 1983 as "superfluous." "Thereafter ... a proceeding under Sec. 1983 served no useful purpose and should be ignored." Id. at 413.
 
 
 51
 I am not persuaded that the lacuna in the enforcement scheme of the Act, which the Hymes court believed to exist and used to support its limited application of section 1983, is present in the case at hand. Here, section 1983 is entirely "superfluous." The way to enforce compliance with the hearing procedures of the statute and thus effectuate congressional intent is by the use of the court's traditional equity powers. See Smith v. Lehman, supra; Ellis v. Blum, supra.
 
 
 52
 The plaintiff's complaint suggests, however, that resort to the administrative process would be futile in this case because the "Commissioner of Education ... is not authorized to award compensatory and punitive damages." On this point, the district court further observed that "having left the school district, the plaintiffs have no administrative remedies to exhaust."
 
 
 53
 I would add, however, that the complaint states that the child is presently receiving appropriate special education services. Thus the assertion of futility cannot be applied to a claim for current or prospective relief because the child's educational needs are presently satisfied. As for the monetary claim, it follows that if the statute provides the exclusive means of relief and the damages sought by plaintiff are not available under the Act, then the inability of the administrative process to award such damages cannot justify its bypass.
 
 
 54
 In Anderson v. Thompson, 658 F.2d 1205, 1209-1214 (7th Cir.1981), the Court of Appeals for the Seventh Circuit pointed out that a compensatory damage remedy is inconsistent with the goals of the statute. Educational programs for the handicapped would suffer if school officials, out of fear of monetary liability for incorrect placements, hesitated to implement innovative reforms. Id. at 1213. To these concerns I add my belief that Congress did not intend that funds appropriated to educate the handicapped be diverted to pay tort damages and attorneys' fees such as are sought in this case. See also Mountain View-Los Altos Union School District v. Sharon B.H., 709 F.2d 28 (9th Cir.1983) (following Anderson ); Miener v. Missouri, 673 F.2d 969, 979-80 (8th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 230, 74 L.Ed.2d 182 (1982) (damage remedy "not generally intended").
 
 
 55
 The court in Anderson recognized, however, that reimbursement to parents for their expenses in obtaining services might be available in certain exceptional circumstances. Thus, where the child's health is in danger or the school district acts in bad faith, parents could recoup the cost of obtaining services that should have been provided by the school system. 658 F.2d at 1213-14 & n. 12; see also Zvi D. v. Ambach, 694 F.2d 904, 908 n. 8 (2d Cir.1982) (reserving question on general and reimbursement damages); Hyatt, "Litigating the Rights of Handicapped Children to an Appropriate Education: Procedures and Remedies," 29 UCLA L.REV. 1, 43-51 (1981) (advocating limited damage awards).
 
 
 56
 Plaintiff in this case, however, has not presented any claim for "reimbursement" type damages. The compensatory damages sought in the complaint are confined to the mother's "emotional distress and anguish" and for the harm incurred because the "plaintiff's infant has been impeded in acquiring" necessary training. Punitive damages are sought for the "false and malicious conduct" of Rowlind. Thus, even under the rationale of Anderson, the damages sought by plaintiff are not available under the Act.[1]
 
 
 57
 In essence then, we are led back to the majority's determination that Congress did not intend to have section 1983 supplement or replace the remedial plan of the Education of the Handicapped Act. Under the majority's view, section 1983 may not be used to collect compensatory damages following exhaustion of the administrative process. It follows inescapably, I believe, that if the damages sought here are not recoverable through or after completion of the administrative route, they should not be available under section 1983 when the administrative process is bypassed. See McGovern v. Sullins, 676 F.2d 98 (4th Cir.1982); see also Anderson v. Thompson, 658 F.2d at 1214-17 (because the EHA does not contain a damage remedy, section 1415 "cannot be given 'unimpaired effectiveness' if a section 1983 action is available"). Holding otherwise would allow parties to make themselves eligible for damages simply by failing to resort to their administrative remedies, as plaintiff did here. Such evasion of congressional aims cannot be permitted.
 
 
 58
 In sum, I would find that plaintiff should have availed herself of the remedies provided by section 1415 either by filing an administrative complaint or by seeking court intervention requiring the school district to proceed with administrative hearings. The defendants' action or inaction did not bar access to those means of redress, and the procedures would not have been futile given the relief contemplated by the Act. Plaintiff chose instead to spurn those avenues and move out of the district. She should not now be allowed to pursue a section 1983 action when she avoided the comprehensive provisions of section 1415.
 
 
 59
 I have confined myself solely to the question of damages under the Education of the Handicapped Act. As the majority indicates, plaintiff has asked for relief on other grounds, but I do not discuss them here because I read the district court's recitation of the questions certified as confined to the Education of the Handicapped Act. I therefore do not address the question whether the allegations of misconduct by Rowlind state a cause of action under section 1983 for violation of the fourteenth amendment separate and apart from an action under the Education of the Handicapped Act.
 
 
 60
 It is unfortunate that this case reaches us in a posture where the question of law to be addressed is not as sharply defined as it would have been had the facts been developed more definitively in the district court. In view of the overlapping claims and the vague nature of the plaintiff's complaint, I harbor substantial doubt about the desirability of entertaining a section 1292(b) appeal in this case.
 
 
 
 *
 Of the United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 The Senate Committee report gives strong indication that reimbursement damages should also be considered in the administrative process. "If a parent contends that he or she has been forced, at that parent's own expense, to seek private schooling for the child because an appropriate program does not exist within the local educational agency responsible for the child's education and the local agency disagrees, that disagreement and the question of who remains financially responsible is a matter to which the due process procedures established under section [1415] applies." S.Rep. No. 168, 94th Cong., 1st Sess. 32 (1975), reprinted in 1975 U.S.Code Cong. & Ad.News 1425, 1456. See also Zvi D. v. Ambach, 694 F.2d at 907