14

Nancy BONAR, on Behalf of Douglas BONAR, an infant; Karen Amey, on behalf of Scott Amey, an infant; Martha Hamann, on behalf of Susan Hamann, an infant; Lynne Sommerstein, on Behalf of Michelle Sommerstein, an infant; Donna Dougherty, on Behalf of Richard Dougherty, an infant; Rita Evelt, on Behalf of John Evelt, an infant, individually and on Behalf of all other similarly situated individuals, Plaintiffs-Appellees,

v.

Gordon M. AMBACH, as New York State Commissioner of Education, Defendant-Appellant.

No. 1081, Docket 85–7088.

United States Court of Appeals, Second Circuit.

Argued April 16, 1985.

Decided Aug. 14, 1985.

Kenneth Pawson, Albany, N.Y. (Robert D. Stone, Albany, N.Y., of counsel), for defendant-appellant.

Gerald P. Seipp, Buffalo, N.Y. (Serotte & Reich, Bruce A. Goldstein, Bouvier, O'Connor, Cegielski & Levine, Buffalo, N.Y., of counsel), for plaintiffs-appellees.

Before MANSFIELD, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This appeal represents another episode in the protracted litigation over attorneys' fees that followed the resolution of a dispute concerning the funding of special education programs for children with learning disabilities. The United States District Court for the Western District of New York, Curtin, *C.J.*, held that plaintiffs, parents of children with learning disabilities, had prevailed over defendant New York Education Department in the underlying litigation. Distinguishing this action from *Smith v. Robinson*, —— U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the court awarded attorneys' fees. 599 F.Supp. 945 (W.D.N.Y.1984). Because we disagree with the court's conclusion that *Smith* permits a section 1988 fee award, we reverse the judgment of the district court. Moreover, in light of the district court's failure to apply the correct standard, we vacate

the court's denial of defendant's application for fees and remand for reconsideration.

BACKGROUND

Plaintiffs are parents of children who suffer from various learning disabilities. The children were enrolled during the 1979–80 school year in two programs operated by Erie County Boards of Cooperative Educational Services (BOCES # 1, BOCES # 2). BOCES are entities authorized under New York law to provide shared educational services to component school districts. N.Y.Educ.Law § 1950 (McKinney Supp. 1985). Among these BOCES services are "self-contained" classroom and "resource room" programs that offer educational services, intensive individual and small group instruction and some additional services to learning disabled (LD) children.

In or around April 1980, BOCES # 1 notified its school districts that its LD classes would be terminated at the end of that school year and that it would not offer such classes in 1980–81. Its action was apparently taken as a result of a memorandum issued in April by the State Education Department (SED). Affidavit of Tricia Semmelhack, J.App. at 83. SED's memo, a modification of one sent to school and district superintendents in January, stated that payment of Public Excess Cost Aid for LD children was prohibited under N.Y. Educ.Law § 3602, subd. 19 (amended 1980). The memo also stated that LD aid was authorized only for district-run programs; hence, LD aid would not be available for LD children in BOCES programs.

Plaintiffs filed suit against defendant Ambach, Commissioner of Education, in late April, alleging that he had ordered BOCES to terminate the LD programs. Plaintiffs sought a preliminary and permanent injunction against such termination, a declaratory judgment holding that the "incipient action" was illegal and in contravention of Ambach's duty to ensure that all children received a free appropriate public education under the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq.* (1982 & Supp. I 1983) (EHA), and costs and attor-

neys' fees pursuant to 42 U.S.C. § 1988 (1982) and 29 U.S.C. § 794a (1982).

In early May, Chief Judge Curtin directed plaintiffs to amend their complaint by joining as defendants the two BOCES and some representative local school districts. Plaintiffs complied, joining both Erie County BOCES and seven school districts: Grand Island Central, Depew, Lancaster Central, Williamsville Central, Sweet Home Central, Lake Shore Central and Sloan [Cheektowaga-Sloan Union]. Plaintiffs' Amended Complaint, J.App. at 20. In response to the court's order to show cause why it should not issue a preliminary injunction against defendants, *id.* at 35, representatives of the parties appeared before the Chief Judge on May 13, 1980. The court directed the parties to meet in a courthouse conference room to discuss possible settlement. At least three meetings occurred; however, no record was made of their content.

In mid-May, while these negotiations were in progress, SED's Assistant Commissioner for Educational Finance and Management Services sent a memo to school superintendents detailing the changes in state aid that had occurred as a result of a change in N.Y.Educ.Law § 3602, subd. 19. J.App. at 95. That statute, which formerly had barred the payment of Excess Cost Aid for LD students, was amended on April 3, 1980 to allow such payments for BOCES- and district-operated LD programs. This change was to become effective in the upcoming 1980–81 school year.

Thus, almost one month prior to the commencement of the present action, which plaintiffs claim was instrumental in inducing the state to finance the BOCES, the state had already acted to do so. *See* Ch. 53, New York Laws of 1980.

After BOCES # 1 received the Commissioner's mid-May memo, its Board of Directors passed a resolution authorizing the district superintendent to submit the required applications for aid to SED on request from the component school districts. Semmelhack Affidavit, J.App. at 84. This resolution was reported to the other parties at the May 23 courthouse meeting and to Chief Judge Curtin soon thereafter.

Several additional meetings occurred in June and early July. During those weeks both BOCES prepared the appropriate request forms for Excess Cost Aid. These applications for 1980–81 aid were approved on June 26, 1980. On July 14 the Semmelhack affidavit on behalf of both BOCES was filed. The affidavit indicated that no further impediment to BOCES LD classes existed and asserted that the suit against both BOCES was moot.

Ambach, BOCES # 1, BOCES # 2 and the school districts moved separately during the summer for dismissal. After hearing oral arguments, the court dismissed the BOCES programs from the lawsuit on September 4 and 5. Subsequently, in a series of orders during the fall of 1980, the court also dismissed the school districts from the action.

Meanwhile, in September 1980, plaintiffs moved for class certification. Although they acknowledged that their primary goal had been achieved, they sought to ensure that non-defendant school districts issued notice to parents of LD children before changing the educational placements of those children.

Plaintiffs' motion for class certification was denied in an opinion filed in July 1981. Noting that "the proposed class representatives have received all of the relief for which they originally petitioned," J.App. at 138, the court refused to order school boards not parties to the suit to notify parents that a hearing procedure existed through which challenges to changes in educational placements could be raised. Because there was "no specific claim of wrongdoing on the part of the Commissioner," the only remaining defendant, the court declined to order him to issue the suggested regulations. *Id.* at 140. Moreover, since each handicapped child would have had an annual evaluation by the local committee on the handicapped in the intervening year, the court suggested that the overall action might be moot. *Id.* at 140–

41. The court thus granted defendant's motion to dismiss the suit and denied plaintiffs' motions for class certification and injunctive relief.

Defendant then moved for attorney's fees, contending that plaintiffs' action was frivolous from its inception or in the alternative that plaintiffs' persistence after July 1980 was vexatious. Plaintiffs filed their own fee application, asserting that they had succeeded in preserving BOCES-operated LD classes for the 1980–81 school year.

In September 1982, Chief Judge Curtin granted plaintiffs' motion for fees against Ambach for the period ending July 14, 1980. The court rejected defendant's contention that the plaintiffs' actions had not caused the change, finding that the state had conceded that BOCES could be reimbursed for LD programs only after the court-supervised meetings began in May 1980. J.App. at 176–77. Although the court refused to award plaintiffs fees for any part of the action after July 14, 1980, it also denied defendant's motion for fees for that period. Ruling that this was not such an exceptional case as to meet the standard articulated in *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980), the court held that Ambach had not made the requisite showing of bad faith.

A few months after this judgment entered, the court received a letter from defense counsel. Interpreting this letter as a motion to reargue and noting that *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), had been decided in the interim, the court directed the parties to file comments concerning the effect of *Hensley*. After considering those submissions, the court reiterated its view that plaintiffs had prevailed and held that *Hensley* did not require a reduction in the amount of the award. J.App. at 189–90. The court also ruled that an action to protect rights guaranteed by 20 U.S.C. § 1412 (1982) could be brought under 42 U.S.C. § 1983 (1982). Thus, the court affirmed its previous decision and awarded fees.

Motions for additional fees were subsequently filed, and the court received further papers from the parties concerning the effect of the Supreme Court's decision in *Smith v. Robinson*, —— U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d 746, (1984). In its opinion of December 1984, from which this appeal was taken, the court held that the instant action fell within the exception suggested by the *Smith* Court in footnote 17. 599 F.Supp. at 947, citing *Smith*, —— U.S. at —— n. 17, 104 S.Ct. at 3470 n. 17. The district court interpreted that footnote and the Supreme Court's assumption of the propriety of a fee award not challenged on appeal to mean that an award under 42 U.S.C. § 1988 was possible, despite the prohibition of fee awards for cases brought pursuant to the provisions of the EHA, where the section 1988 claim is for work done to force an agency to provide due process. Because the court viewed plaintiffs' attempts to ensure the continuation of the BOCES programs as "essentially ... due process claim[s] within the purview of section 1983," the court held that *Smith* did not bar the fee award. 599 F.Supp. at 948 (footnote omitted). The court also allowed fees for work done in preparing the fee motion.

## DISCUSSION

### 1. *Attorneys' Fees*

This appeal requires us to decide whether attorneys' fees are available under 42 U.S.C. § 1988 for work done to ensure the continuation of the BOCES programs. Defendant contends that a fee award here is precluded by *Smith*, in which the Supreme Court held that fees under section 1988 were not available to remedy alleged equal protection violations because those claims were "virtually identical" to the EHA claims. —— U.S. at ——, 104 S.Ct. at 3468. The Court, in a footnote, also suggested that a due process claim for injunctive relief independent of EHA would be justified where irreparable harm would occur if the statutory procedures were not circumvented. *Id.* at —— n. 17, 104 S.Ct. at 3470 n. 17. Plaintiffs assert that the district

court's judgment is consistent with *Smith* because their claims, which they characterize as allegations of deprivation of access to administrative procedures, are not cognizable under the EHA. In the alternative, plaintiffs suggest that resort to EHA was futile.

The EHA provides a comprehensive scheme of enforcement of the right of handicapped children to a free appropriate public education. 20 U.S.C. § 1415 (1982). "Both the provisions of the statute and its legislative history indicate that Congress intended handicapped children with constitutional claims to a free appropriate public education to pursue those claims through the carefully tailored administrative and judicial mechanism set out in the statute." *Smith,* —— U.S. at ——, 104 S.Ct. at 3468. *See also Teresa Diane P. v. Alief Independent School District,* 744 F.2d 484, 490 (5th Cir.1984); *Quackenbush v. Johnson City School District,* 716 F.2d 141, 145–47 (2d Cir.1983) (detailing EHA's procedural scheme), *cert. denied,* —— U.S. ——, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984). Among the EHA's provisions are procedures that allow parents to challenge proposed changes in educational placement; "an opportunity for an impartial due process hearing" must be provided in the event that such a complaint is made. 20 U.S.C. § 1415(b) (1982). Judicial review of final agency decisions is provided for by section 1415(e)(2) (1982).

■ The EHA's judicial review provision is the exclusive means by which review of a final administrative decision may be had. *Quakenbush,* 716 F.2d at 147. Where a claim may be decided under the terms of the EHA, then no separate action under 42 U.S.C. § 1983 may be maintained. *Id.; see also Smith,* —— U.S. at —— n. 11, 104 S.Ct. at 3468 n. 11; *Austin v. Brown Local School District,* 746 F.2d 1161, 1166 (6th Cir.1984) (section 1983 claims were "interwoven" with EHA claims; no allegation of independent due process violation was presented), *cert. denied,* —— U.S. ——, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985). *Cf. Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981) ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."). If, on the other hand, a separate constitutional violation outside of the scope of EHA is presented, EHA's comprehensive enforcement scheme will not bar a suit under section 1983. *See, e.g., Rose v. Nebraska,* 748 F.2d 1258, 1263 (8th Cir.1984) (section 1983 suit appropriate where due process claim goes to partiality of hearing officer), *petition for cert. filed,* 53 U.S.L.W. 3718 (U.S. Mar. 15, 1985); *Teresa Diane P.,* 744 F.2d at 491 (quoting *Smith,* —— U.S. at —— n. 17, 104 S.Ct. at 3470 n. 17, and noting that in certain circumstances a plaintiff making a procedural due process claim might be entitled to bypass the statutory procedures; remanding for consideration of whether fee award is appropriate); *Quackenbush,* 716 F.2d at 147–48 (section 1415(e)(2) judicial review not available where plaintiff was deprived of EHA's procedural safeguards by action of school board official; section 1983 action permitted). Therefore, we must determine whether plaintiffs' allegations of due process violations state a claim outside of the scope of EHA.

■ When plaintiffs filed the underlying action in April 1980, their children were enrolled in BOCES programs that were to operate through the end of the 1979–80 school year. Plaintiffs assert that the alleged directive from defendant to the school districts would have had the effect of terminating the BOCES programs for the summer of 1980 and the 1980–81 school year. In its July 1981 opinion, the district court commented that plaintiffs had argued that the SED "directive ... had the effect of interrupting the children's education which could not be done without prior arrangement to preserve the continuity of the children's educational program." J.App. at 138. The court concluded that "[t]he plaintiffs were successful in continuing the edu-

cational programs of these handicapped youngsters without interruption." *Id.* at 141.

Since the State of New York had on April 3, 1980, enacted and signed into law a statute authorizing excess cost aid funds to be used for the financing of BOCES programs, it is difficult to understand how the plaintiffs' present action, commenced on April 29, 1980 (almost a month later) could have been a factor leading the state to take that step. But assuming *arguendo* that plaintiffs achieved the continuation of these programs and their children's placement therein, their accomplishment falls directly within the scope of the EHA. Section 1415(b) states, in pertinent part:

> (1) The procedures required by this section shall include, but shall not be limited to—
>
> . . . .
>
> (E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

Plaintiffs' efforts to ensure that their children's placements were continued without interruption surely constitute "any matter relating to the . . . educational placement of the child." Despite plaintiffs' subsequent attempts to assert broader claims, the success attributed to plaintiffs by the district court was well within the EHA's "elaborate, precisely defined administrative and judicial enforcement system." *Quackenbush,* 716 F.2d at 147.

Plaintiffs have failed to allege or to prove any entitlement to procedural due process independent of the procedures contained in the EHA. Although the parents certainly have a "legitimate claim of entitlement" to the EHA procedures, that claim is "grounded in the statute." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The record does not support the district court's conclusion that plaintiffs were entitled to some process other than that supplied by the EHA.

Plaintiffs' efforts to demonstrate that resort to the EHA procedures was not possible are unconvincing. They argue that the SED "directive" made access to EHA procedures futile. The district court made no such finding; it merely stated in summary fashion that "[t]hese procedures were not invoked, because defendant's conduct made them unavailable." 599 F.Supp. at 947. The record does not support that conclusion. *Cf. Quackenbush,* 716 F.2d at 147–48 (judicial review not available because school district forgery was directly responsible for plaintiff's failure to exhaust administrative remedies; section 1983 remedy implied to provide relief).

We hold that the claims on which plaintiffs allegedly prevailed lie within the bounds of the EHA. Because the EHA contains no attorneys' fees provision, an award would thus ordinarily be precluded. In footnote 17 of *Smith,* however, plaintiffs claim to find both the means for an award of fees under section 1988 and support for their failure to invoke the EHA procedures. In that footnote the Court suggested that an independent due process challenge to state procedures might succeed where an independent equal protection claim could not, such as when resort to EHA procedures would be futile or inadequate. The due process challenge "would not be inconsistent with the EHA's comprehensive scheme. Under either the EHA or § 1983, a plaintiff would be entitled to bypass the administrative process by obtaining injunctive relief *only* on a showing that irreparable harm otherwise would result." — U.S. at — n. 17, 104 S.Ct. at 3470 n. 17 (emphasis added).

Even if plaintiffs are correct in believing that this dictum represents an exception to the rule that EHA provides an exclusive remedy, the record before us does not support the conclusion that the instant case would be a proper vehicle for application of this exception. By its terms the exception may be invoked only on demonstration of irreparable harm. No such finding was made below. The court's finding that "plaintiffs' efforts were necessary," J.App.

at 177, does not suffice. In view of the *Smith* Court's careful formulation of the exception, we refrain from reading into the district court's opinion a finding that does not exist on a question that was not considered.

In the absence of any indication that plaintiffs' action lies within the bounds of the apparent exception suggested by the Court in footnote 17, we decline to permit an award of fees on that basis. Because fees are likewise unavailable for actions brought pursuant to the EHA, the district court's award of fees must be reversed.

### 2. *Prevailing Party*

Our holding that plaintiffs' claims fell exclusively within the EHA requires reversal of the district court's ruling that plaintiffs were prevailing parties pursuant to section 1988. Because EHA provided the only remedy for plaintiffs' alleged injuries, no section 1983 analysis should have been performed. Thus, although the district court found as fact that plaintiffs' suit had encouraged SED's eventual agreement to continue the BOCES funding, that finding was devoid of legal effect.

### 3. *Defendant's Fee Motion*

■ Finally, we must consider defendant's motion for attorney's fees. In September 1981 defendant moved for fees, asserting that plaintiffs' suit had been frivolous from the beginning or in the alternative that plaintiffs' continuation of the suit after July 1980 was vexatious. In its September 1982 order, the court denied defendant's motion, holding that plaintiffs' actions did not meet the bad faith threshold established by *Nemeroff*, 620 F.2d at 348. Because the court applied an incorrect standard, we vacate the denial of defendant's motion and remand for reconsideration according to the proper standard, particularly as to the period after the action was dismissed in July 1980.

In *Christiansburg Garment Co. v. E.E. O.C.*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), the Supreme Court outlined the standard applicable for fee awards to defendants in actions under Title VII of the Civil Rights Act of 1964. "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." 434 U.S. at 421, 98 S.Ct. at 700. The Court also endorsed the reasoning of this Court and the Third Circuit requiring a defendant seeking fees to demonstrate that the suit was "unreasonable, frivolous, meritless or vexatious." *Id.* (quoting *Carrion v. Yeshiva University*, 535 F.2d 722, 727 (2d Cir. 1976)).

The standard adopted for Title VII cases in *Christiansburg Garment Co.* has been cited with approval by the Supreme Court in a section 1983 action. In *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (per curiam), the Court noted that while the section 1983 standard might not be identical to that used in Title VII cases, it would certainly be no less stringent. The Court stated that for a section 1983 defendant to receive fees "[t]he plaintiff's action must be meritless in the sense that it is groundless or without foundation." *Id.* at 14, 101 S.Ct. at 178.

This Circuit has adopted the *Christiansburg Garment Co.* test for evaluating fee applications from prevailing section 1983 defendants. *See, e.g., Santiago v. Victim Services Agency*, 753 F.2d 219, 221 (2d Cir.1985); *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir.1984); *Davidson v. Keenan*, 740 F.2d 129, 132–33 (2d Cir.1984).

Because the district court did not apply the correct standard, we remand for reconsideration. On remand the court should determine whether plaintiffs' "claim was frivolous, unreasonable, or groundless, or [whether] the plaintiff[s] continued to litigate after it clearly became so." *Christiansburg Garment Co.*, 434 U.S. at 422, 98 S.Ct. at 700.

### CONCLUSION

We hold that the district court erred in awarding attorneys' fees to plaintiffs pur-

suant to section 1988. Because plaintiffs asserted no due process claims independent of the EHA, no separate section 1983 action could be maintained; plaintiffs similarly failed to demonstrate that their procedural claims within the EHA could not have been resolved through the proper administrative channels. Because no independent due process claim may be maintained, the court's conclusion that plaintiffs prevailed for section 1988 purposes has no legal effect. We reverse the judgment awarding fees to plaintiffs. We also vacate the court's denial of defendant's fee application and remand for reconsideration according to the proper standard.