**M.R., as parent and natural guardian of J.R., and J.D., as parent and natural guardian of K.D., individually and in behalf of all others similarly situated, Plaintiffs,**

v.

**MILWAUKEE PUBLIC SCHOOLS, et al., Defendants.**

**No. 80–C–592.**

United States District Court, E.D. Wisconsin.

April 16, 1984.

---

Harold L. Harlowe, Thomas E. Dixon, Madison, Wis., for plaintiffs.

James T. McClutchy, Theophilis Crockett, Asst. City Atty., Milwaukee, Wis., Daniel D. Stier, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

This case involves claims brought by two handicapped children, on behalf of themselves and a class of similarly situated children, for declaratory, injunctive, and monetary relief. The plaintiffs allege that the defendants have deprived them of an appropriate education at public expense, in violation of the equal protection clause of the fourteenth amendment to the United States Constitution, § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), the Education for All Handicapped Children Act (EAHCA) (20 U.S.C. § 1401 et seq.) and Article X, Section III of the Wisconsin Constitution. The plaintiffs also claim that certain policies and practices of the defendants have denied them their right to due process of law as guaranteed by the fourteenth amendment, 29 U.S.C. § 794, 20 U.S.C. § 1401 et seq., and the Wisconsin Constitution.

Proceedings in this action were held in abeyance for over a year, at the parties' request, while settlement negotiations were being conducted. In May, 1983, the court was informed that the settlement process had broken down. At that time there were a number of motions pending in the case. Briefing and resolution of these motions had been suspended while the settlement negotiations were proceeding. On July 12, 1983, attorney David Lowe was appointed as a special master and was charged with determining the order in which the pending

motions should be resolved and recommending their resolution.

On November 15, 1983, Mr. Lowe filed his report and recommendations with the court. The parties were then given an opportunity to file objections to the report and to respond to each other's objections.

In his report, Mr. Lowe focuses on the motion for summary judgment made by the defendants Milwaukee Public Schools (MPS) and Milwaukee Board of School Directors and joined in by the State Superintendent of Public Instruction and Milwaukee County Department of Social Services. According to the special master, the parties agree that a sufficient factual dispute exists as to the plaintiffs' allegations of widespread administrative irregularities in the way handicapped children are evaluated and placed so as to force a trial of any issue as to which these allegations are materially significant; however, the defendants maintain that even if such allegations are taken as true, summary judgment should be granted in their favor.

For purposes of making a recommendation concerning the defendants' motion for summary judgment, Mr. Lowe made the assumption that issues of fact exist concerning the plaintiffs' allegations that the defendants failed adequately to evaluate the educational needs of the plaintiff class, failed to develop an adequate number of in-school placements for the children, and failed to "ensure the availability of a continuum of alternative placements for them as is required by federal law."

The special master also states that he has taken as true, for purposes of the defendants' motion, the plaintiffs' claims that MPS "unlawfully biased, delayed, and interfered with the evaluation and placement process to prevent placements in day treatment, although such placements were appropriate and required," and that MPS delayed offers of new placements so long that at the conclusion of the appeal process the requested placements in day treatment would no longer be available because the day treatment centers would have closed for lack of contracts for their services.

The defendants argue that, even making the assumptions just summarized, the plaintiffs' complaint must be dismissed for failure to exhaust administrative remedies under § 615 of the EAHCA, 20 U.S.C. § 1415. The defendants also urge that there is no alternative cause of action because EAHCA provides the exclusive remedy.

Mr. Lowe's report reviews the statutory and case law regarding these issues in a thorough and perceptive fashion. Based on this review, he recommends that the defendants' motion for summary judgment be granted with respect to the plaintiffs' claims for declaratory and permanent injunctive relief, and that those claims be dismissed without prejudice for failure to exhaust administrative remedies. Mr. Lowe also recommends that the motion for summary judgment be denied with respect to the named plaintiffs' claims for damages under 42 U.S.C. § 1983.

In resolving the pending summary judgment motion, I intend to follow Mr. Lowe's recommendation with respect to the plaintiffs' claims for injunctive and declaratory relief. Contrary to his suggestion, however, the defendants' summary judgment motion will also be granted as to the named plaintiffs' claims for damages.

Mr. Lowe's report is hereby made a part of this opinion as an appendix. The following discussion of the issues adopts the special master's analysis in some instances, expands on it in others, and embraces an alternative analysis in still other instances.

■■■ I see no need for additional comment or modification of Mr. Lowe's discussion of the factual and procedural background of this action and of the issue of exhaustion of administrative remedies. Those sections of his report are hereby adopted as the opinion of the court.

The next section of Mr. Lowe's report addresses the plaintiffs' assertion that, even if their EAHCA claims are dismissed for failure to exhaust administrative remedies, their claims under the Rehabilitation Act of 1973 and under 42 U.S.C. § 1983 are

independent claims with respect to which exhaustion of remedies is not required. In rejecting the plaintiffs' argument, Mr. Lowe relied on the opinion of the Court of Appeals for the Seventh Circuit in *Timms v. Metropolitan School District of Wabash County, Indiana,* 718 F.2d 212 (7th Cir. 1983) (*Timms I*). On November 18, 1983, a few days after Mr. Lowe submitted his report to this court, the original opinion in *Timms* was modified by the court. *Timms v. Metropolitan School District of Wabash County, Indiana,* 722 F.2d 1310 (7th Cir. 1983) (*Timms II*). In my judgment, the modified opinion does not dictate a different outcome in the case at bar, but it does merit some additional discussion of the issues.

In its second *Timms* opinion, the court held that the plaintiff's claim for equitable relief under the EAHCA was moot. In contrast to the first *Timms* opinion, the court declined to decide whether "compensatory education" is an available remedy for violations of the EAHCA, holding instead that the plaintiff's failure to exhaust administrative remedies mandated dismissal of her EAHCA claim in its entirety. The court then proceeded to discuss whether the plaintiff could continue to pursue her claim under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, under these circumstances, and concluded that she could not.

The court noted that there are differences in scope between the EAHCA and the Rehabilitation Act, but pointed out that the acts generally overlap in the primary and secondary education context. The court went on to state:

"Whether or not section 504 itself can be the basis for a claim in these odd circumstances, it cannot be used to circumvent the procedural requirements imposed by the EAHCA when the two claims are parallel, because to do so would thwart the intent of Congress, manifested in the structure of the more detailed and specific EAHCA. This is true for procedural challenges to state and local agency action as well as for challenges regarding substantive placement decisions, because the EAHCA provides for scrutiny of alleged procedural irregularities. *See Board of Education v. Rowley,* [458 U.S. 176], 102 S.Ct. [3034] at 3050 [73 L.Ed.2d 690]. One of the EAHCA procedural requirements is exhaustion of administrative remedies. Dismissal of the plaintiffs' EAHCA claim for failure to exhaust also requires dismissal of their section 504 claim."

*Timms II,* at 1318 (footnotes omitted).

This language makes it clear that, at least where EAHCA and Rehabilitation Act claims are "parallel," a plaintiff cannot proceed with a claim under the latter statute—whether it is based on a substantive or a procedural challenge to state and local agency action—without having exhausted administrative remedies under the EAHCA. Although the plaintiffs in this case assert that their claim under the Rehabilitation Act is independent of their EAHCA claim, it is apparent from the complaint that the claims are based on the same set of facts and must at least be considered "parallel." Therefore, I conclude that the plaintiffs' failure to exhaust their administrative remedies under the EAHCA bars them from pursuing their claim under the Rehabilitation Act at this time.

The plaintiffs also assert that they have an independent cause of action pursuant to 42 U.S.C. § 1983, and that this claim can be pursued regardless of whether or not EAHCA remedies have been exhausted. In *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981), the court concluded that § 615(e)(2) of the EAHCA (20 U.S.C. § 1415(e)(2)) is an exclusive remedy for violations of the statute, and that an action under 42 U.S.C. § 1983 is not available to redress such violations. The court based its conclusion on "the availability of a private right of action under the EAHCA, the detailed statutory administrative and judicial scheme, the fact that Congress intended the EAHCA to create new rights, and the absence of a traditional damage remedy." *Anderson,* 658 F.2d at 1217. *See also Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453

U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Doe v. Koger,* 710 F.2d 1209 (7th Cir.1983) (violations of EAHCA cannot be redressed under 42 U.S.C. § 1983 even when claim is that administrative procedures are deficient).

▪ The *Anderson* and *Doe* cases make it apparent that the plaintiffs in this action cannot seek relief under 42 U.S.C. § 1983 for violations of the EAHCA. A somewhat different question, however, is whether § 1983 is available, without exhaustion of administrative remedies, to redress the plaintiffs' claims that their federal constitutional rights have been violated, when the claimed violations parallel factually the alleged violations of the EAHCA. This question was left unresolved by the court in *Anderson. See* 658 F.2d at 1217 n. 19.

A number of courts have addressed this issue and have concluded that exhaustion of the EAHCA procedures should be required before constitutional claims that parallel EAHCA claims can be pursued in federal court. *See, e.g., Vermont Association for Learning Disabilities, Inc. v. Kaagan,* Current EHLR Dec. 554:447 (D.Vt.1983); *Mitchell v. Walter,* 538 F.Supp. 1111 (S.D.Ohio 1982); *Smith v. Ambach,* 3 EHLR 552:490 (W.D.N.Y.1981); *H.R. v. Hornbeck,* 524 F.Supp. 215 (D.Md. 1981). I am in concurrence with the reasoning of these courts; therefore, the plaintiffs will not be permitted to proceed here with their constitutional claims since they have not exhausted their administrative remedies under the EAHCA.

▪ With respect to the question of the named plaintiffs' claims for damages, Mr. Lowe's analysis is adopted as the opinion of the court with the exception of (1) his discussion of *Quackenbush v. Johnson City School District,* 716 F.2d 141 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984) and (2) his conclusion that summary judgment should be denied with respect to the damage claims. Mr. Lowe was persuaded by the majority opinion in *Quackenbush* that summary judgment was inappropriate at this point concerning the named plaintiffs' damage claims. The plaintiff in *Quackenbush* alleged that she had been precluded from using the EAHCA's administrative remedies by the defendants' wrongful action. Taking these allegations as true, the majority concluded that she had no remedy under the EAHCA and therefore should be permitted to proceed with her damage suit under 42 U.S.C. § 1983.

▪ The situation is quite different in the case at bar. In this case, the plaintiffs followed the course recommended by the dissent in *Quackenbush* and sought the assistance of the court in helping them overcome the obstacles the defendants were allegedly putting in the path of their pursuit of the EAHCA's administrative remedies. As Mr. Lowe discusses at length in the section of his report dealing with the exhaustion question, the preliminary injunction entered by this court was designed to ensure that the plaintiffs had available the remedies to which they were entitled under the EAHCA. This circumstance differentiates the case at bar from *Quackenbush* and renders unnecessary the *Quackenbush* court's conclusion that the plaintiff would be without a remedy unless a suit for damages were allowed under 42 U.S.C. § 1983.

I conclude that the defendants' motion for summary judgment should be granted as to the named plaintiffs' claims for damages. This result is consistent with the conclusion of the court in *Anderson, supra,* that damages are not available under the EAHCA except in extraordinary circumstances not present here, and that permitting recovery under 42 U.S.C. § 1983 would be inconsistent with the EAHCA because the latter statute provides no damage remedy. It is also consistent with the court's recognition in *Doe, supra,* and *Timms II, supra,* that the EAHCA provides a remedy for procedural as well as substantive violations.

Because the plaintiffs' federal claims are being dismissed, it is appropriate that their pendent state law claims be dismissed also.

*United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that this action be and hereby is dismissed, without prejudice.

## APPENDIX

## REPORT AND RECOMMENDATIONS OF SPECIAL MASTER ON MOTIONS FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This action was commenced on July 3, 1980 by two children identified as having exceptional educational needs and their parents against the Milwaukee Public Schools and its Board of School Directors (MPS), the State Superintendent of Public Instruction, the State of Wisconsin Department of Public Instruction, and the Milwaukee County Department of Social Services and its Director.

The plaintiffs, claiming to represent a class of handicapped children requiring educational placements in highly-structured therapeutic environments that are unavailable in traditional special classrooms or program settings, sought injunctive, declaratory and monetary relief pursuant to 42 U.S.C. § 1983 for the deprivation of a right to appropriate education at public expense, allegedly secured to them by the Education of All Handicapped Children Act, 20 U.S.C. § 1401, *et seq.,* § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and Article X, Section III of the Wisconsin Constitution. They also alleged that certain policies and practices of the defendants denied them due process guaranteed by the same constitutional and statutory provisions.

The following background is alleged in the complaint:[1] The minor plaintiffs and their class, consisting of approximately 200 children, reside in Milwaukee County and have mental impairments which render them unable to function or progress in traditional special classroom settings. Their condition requires that they receive treatment simultaneously with their education.

The plaintiffs allege that the MPS failed to evaluate the educational needs of mentally handicapped children in its schools, failed to develop sufficient, adequate in-school placements, and failed to make available a "continuum of alternative placements" for these children. As a result of these failures by the MPS, the plaintiffs sought help from the Milwaukee County Department of Social Services (DSS), sometimes as a result of delinquency or dependency proceedings in juvenile court. DSS undertook to place children of the plaintiff class in "day treatment centers" which served as "intermediate alternatives to residential treatment facilities," recognizing that these children would otherwise end up in residential or correctional facilities away from their homes and families. These placements were made in cooperation with the Wisconsin Department of Public Instruction (DPI), and DSS bore the full cost.

In June, 1980 DSS advised MPS that it could not continue to pay for what it termed the "educational" component of the program and would only be willing to fund the "treatment" portion. In view of the DSS decision to terminate the previous funding arrangement, and the failure of MPS and DSS to reach an agreement for the continuation of the day treatment programs, DSS notified the plaintiffs and the other families with children in the day treatment programs that they would be terminated from the programs as of July 1, 1980, unless MPS were to agree to purchase the "educational component" of the services. Moreover, because the day treat-

---

1. In response to the defendant's motion for summary judgment and for class decertification, the plaintiffs have filed a motion to amend the complaint in order to redefine the plaintiff's class into two subclasses and to add additional class representatives as named parties. However, all of the factual allegations are otherwise the same as in the original complaint.

ment centers depended upon a minimum number of service contracts for their survival, the failure of the MPS and DSS to reach an agreement for the continued funding of the day treatment centers effectively forced them to terminate all services and close their doors.

Although aware of the imminent termination of these day treatment programs, MPS failed to develop appropriate alternative services for the plaintiffs. MPS also delayed making offers of new placements for so long that even if a day treatment program was deemed to be the appropriate placement, the program was no longer available, because the centers had closed in the interim. Further, the MPS advised parents who had filed appeals that the impending end to the DSS-funded day treatment programs could not be administratively challenged or appealed. In addition, the plaintiffs were found to require continued programming during the summer, but MPS failed to provide for summer placements, causing them to be removed from their day treatment schools on July 1, 1980, and resulting in a deterioration of their behavior and emotional levels. As a result, plaintiffs claim that they were denied their right to an education.

Upon commencement of this action, the plaintiffs moved for and received a temporary restraining order which required the defendants to reinstate the plaintiff children and their class, consisting of children having exceptional educational needs enrolled in extended year programs in day treatment educational centers in Milwaukee County pending a hearing on plaintiffs' motion for a preliminary injunction.

The defendants thereafter moved to dismiss on a variety of grounds, but except for the Wisconsin Department of Public Instruction's motion to dismiss, which was granted on Eleventh Amendment grounds, the motions were denied. The motions to dismiss were denied because affidavits had been submitted along with the motions and, treated as motions for summary judgment under Rule 56, *Federal Rules of Civil Procedure*, the court found factual disputes for trial.

The plaintiffs' motion for preliminary injunction requested broad relief, including an order enjoining defendants:

(1) from terminating the plaintiffs' placements and removing them from their day treatment placements until full and impartial evaluations of their needs and the completion of the administrational and judicial review of those hearings;

(2) from delaying, biasing or interfering with the evaluation and development of educational placement offers for plaintiffs;

(3) to complete the evaluations within 30 days and to issue appropriate placement offers within 15 days thereafter;

(4) from terminating the placements of those plaintiffs in summer school; and

(5) to develop "a continuum of services" for plaintiffs to avoid the necessity of having to place them in residential treatment programs.

MPS opposed the motion, arguing that the plaintiffs had voluntarily left the MPS and had enrolled in day treatment programs at DSS expense, and that such enrollments did not constitute placements subject to the procedural safeguards in 20 U.S.C. § 1415.

The court granted a preliminary injunction limited to the first of the five enumerated requests, enjoining the defendants from terminating the day treatment placements of the plaintiffs, and the class of all those handicapped children under MPS jurisdiction who were placed in day treatment centers as of November 1, 1979, until the parents' time to appeal from a notice of a proposed change in placement expires, or until the parents' appeal of a proposed change in placement reaches a conclusion.

Thereafter, the parties proceeded with discovery and the defendants filed motions for summary judgment and for decertification of the plaintiff class. The plaintiffs filed briefs and materials opposing the mo-

tion for summary judgment, and moved to amend the complaint and to redefine the class. Other discovery-related motions were also filed.

In January, 1982, counsel for the plaintiffs and the defendants informed the court that intensive negotiations to settle the case were being undertaken and requested that consideration of the pending motions be deferred. In December, 1982, the parties informed the court that a tentative final settlement had been reached, but the settlement apparently broke down in March, 1983. Accordingly, the court requested that counsel submit their views on the order in which the old, pending motions should be resolved and that they attempt to agree on an appropriate sequence. However, the parties were unable to agree and by order dated July 12, 1983, I was appointed Special Master. I was charged to meet with the parties and to file a report with recommendations for the resolution of the pending motions. In accordance with the court's order, I submit the following report and recommendations.

## II. MOTION FOR SUMMARY JUDGMENT

To facilitate the disposition of the pending motions, the parties agreed that for purposes of the Milwaukee Public Schools' and the State Superintendent's motions for summary judgment, there is a sufficient factual dispute regarding the plaintiffs' allegations of widespread administrative irregularities to force a trial of any claim to which such allegations bear material significance. The defendants take the position that even if such allegations are assumed to be true, they are entitled to summary judgment dismissing the case.

Thus, for purposes of this motion, it shall be assumed that there are issues of fact regarding plaintiffs' allegation that the defendants have failed adequately to evaluate the educational needs of the plaintiff class of children, that they failed to develop an adequate number of in-school placements for the plaintiff class of children, and that they failed adequately "to ensure the avail-ability of a continuum of alternative placements for them as is required by federal law."

In addition, plaintiffs' allegations that MPS "unlawfully biased, delayed and interfered with the evaluation and placement process to prevent placements in day treatment, although such placements were appropriate and required" will also be taken as true, as well as their allegations that MPS delayed offers of new placements so long that at the conclusion of the appeal process the requested placements in day treatment were no longer available because of the expiration of the day-treatment purchase-of-service contracts.

The defendants MPS and State Superintendent of Public Instruction argue that plaintiffs must exhaust administrative remedies available under § 615 of the Education of All Handicapped Children's Act (EAHCA), 20 U.S.C. § 1415, before suing on that statute in federal court, and that there is no alternative cause of action because the EAHCA provides the exclusive remedy.

The plaintiffs argue that exhaustion of remedies is not required because under the circumstances of the case it would be futile, and further contend that they have independent claims for relief under the Rehabilitation Act of 1973 and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

### A. Exhaustion of Remedies

The parties agree that administrative remedies must be exhausted before a claim under the EAHCA may be pursued in federal court, unless to do so would be futile. *McGovern v. Sullins*, 676 F.2d 98 (4th Cir. 1982); *Riley v. Ambach*, 668 F.2d 635 (2nd Cir.1981); *Ezratty v. Puerto Rico*, 648 F.2d 770, 774 (1st Cir.1981). The plaintiffs argue that exhaustion would be futile in this case because they were denied access to the administrative appeal process and because the educational program they seek to preserve, day treatment centers, no longer exists.

Procedurally, the plaintiffs do not contend that Chapter 115, Wis.Stats., including

the procedure for parent appeals set forth in § 115.81, Wis.Stats., is inconsistent with the EAHCA. Rather, their claim at the commencement of this action was that the defendants were not following this statute in connection with the termination of day treatment programs. However, even if it is assumed that MPS improperly biased the evaluations made by multi-disciplinary teams and delayed offers of placements so long that an appeal could not be resolved before the day treatment centers closed, it was the purpose of the injunction in this case to safeguard the parents' appeal rights and to require the continued funding of day treatment programs pending the resolution of the appeals or the expiration of time within which to file an appeal.

At the time the action was commenced, the plaintiffs were faced with the immediate termination of their educational placements and had not been offered alternative placements with sufficient time to appeal their removal prior to the change in placements. Both the EAHCA, in 20 U.S.C. § 1415(e)(3), and Wisconsin law, in § 115.-81(3), Wis.Stats., require that unless an agreement is reached with the parents, the child must remain in his current educational placement during the pendency of parental appeal proceedings. However, the MPS did not view the closing of the day treatment centers as a change in placements and did not intend to fund the centers pending any appeals by parents of their closing.

Since the plaintiffs had no administrative remedy to compel MPS and DSS to continue funding the day treatment programs pending resolution of the administrative appeals, they commenced this action and sought a preliminary injunction. Under the circumstances, exhaustion of the administrative appeal procedure would have been futile, since the day treatment centers would have long since closed their doors by the time plaintiffs' appeals would have been resolved. Therefore, immediate injunctive relief was appropriate and was tailored to preserve the status quo and protect the plaintiffs' procedural rights to challenge the changes in placements resulting from the closing of the day treatment centers.

More than three years have passed since the preliminary injunction was issued. The time within which the members of the plaintiff class had an opportunity to appeal their removals from the day treatment centers has long since expired, since such appeals must be filed within four months of a notice of change in placement or removal from a program. § 115.81(1)(a), Wis.Stats. The complaint and the proposed amended complaint allege that the problems regarding student evaluations, placements and notices arose in the context of the elimination of the day treatment programs and the adequacy of substitute programs. Although the plaintiffs continue to challenge the "gap" created by the elimination of day treatment centers, the immediate problem of protecting appeal rights presented at the commencement of this action no longer exists. I believe that exhaustion of remedies is necessary before a federal court can review the MPS' decision to eliminate day treatment centers as one of its programs for handicapped students.

The circumstances existing when this action was commenced were much like those present in *Parks v. Pavkovic*, 536 F.Supp. 296 (N.D.Ill.1982), a case upon which plaintiffs rely. In *Parks*, parents sued state and local education authorities for failing to assume the full cost of their handicapped child's residential placement. Due to an outstanding bill accumulated because of defendants' refusal to pay, the facility had issued a discharge notice to the parents. The parents filed an administrative complaint and had had a hearing at which their claim was denied. They then appealed, but no decision had been rendered by the time the discharge notice was issued. Faced with this emergency, the parents filed the federal action and the district court issued a preliminary injunction, finding that exhaustion would have been futile due to the press of time, the need to preserve the *status quo* as required by EAHCA, and because many if not all of

the defendants' actions were mandated by state law.

In both *Parks* and the case at bar, parents were faced with an involuntary change in their child's placement and needed a preliminary injunction to maintain the *status quo*. As in *Parks*, the preliminary injunction issued in this case protected the plaintiffs' appeal rights by requiring the defendants to continue the plaintiffs' day treatment placements until the time for parental appeals of a proposed change in placement had expired or any appeal of such a change had reached a conclusion. The time period for such proceedings has long since expired, and thus the procedural problem that made exhaustion of these remedies futile no longer exists.

Substantively, the plaintiffs claim that the MPS has failed to evaluate fairly the needs of its handicapped children, to develop adequate and sufficient educational placements and to maintain a continuum of alternative placements for these children.

These substantive matters are precisely those intended to be reviewed under the procedures educational agencies are required to establish under the EAHCA[2]. Section 115.81, Stats., regarding parental appeals, affords an adequate means for challenge and review of the placement decisions challenged in this action. There is no reason to believe that a parent cannot successfully challenge what they claim is a "gap" in the continuum of services for their child before a hearing officer under § 115.81 or upon subsequent review before the State Superintendent under § 115.81(7). Indeed, inappropriate placement decisions such as those complained of by the plaintiffs are the very matters for which the administrative appeal process is designed.

Substantive challenges of this kind were found to require exhaustion in *Calhoun v. Illinois State Board of Education*, 550 F.Supp. 796 (N.D.Ill.1982), an action

brought under the EAHCA by parents of a mentally retarded child against state and local school authorities based on defendants' failure to hold a multidisciplinary staffing conference, to formulate an individual education placement, and to determine a proper placement in a prompt manner, allegations much like those made by plaintiffs here. The plaintiffs also challenged the defendants' refusal to reimburse them for transportation costs incurred in moving their child from their former residence in Kentucky to Illinois. Conceding that they had not exhausted their administrative remedies, the parents argued that exhaustion would be futile since the state had already refused reimbursement of transportation expenses, the defendants had failed to develop a timely IEP for their child, and the child had been improperly placed. The district disagreed, and dismissed the case for failure to exhaust administrative remedies, reasoning as follows:

"This court fails to see how the above contentions, even if true, would show that the pursuit of administrative remedies would be futile. Indeed, these issues are manifestations of the central issue presented by plaintiffs, which is to require the state to take the steps necessary to provide Stephen a 'free appropriate public education', a matter best resolved initially at the agency level. [Citations omitted.] When Stephen was at Madden Center [an inappropriate placement] judicial intervention might have been appropriate to facilitate replacement, given the inordinate delays, ... but the present disputes are between the local board and plaintiff over conference scheduling and approval of alternate facilities. Under these circumstances the interests served by the exhaustion doctrine weigh heavily, and judicial review, if ultimately necessary, will be greatly

**2.** 20 U.S.C. § 1415(b)(1) provides:
"The procedures required by this section shall include, but shall not be limited to

. . . . .

(E) an opportunity to present complaints with respect to *any matter* relating to the identification, evaluation or educational placement of the child, or the provision of a free appropriate public education to such child." (Emphasis added.)

facilitated by a record of the administrative proceedings." 550 F.Supp. at 801–802.

These considerations apply with equal force to the plaintiff's challenge in this case to the defendants' failure to continue funding day treatment centers.

The plaintiffs seek to bypass the administrative appeal process because their class is large in number, allegedly consisting of more than 200 children. They rely upon *Jose P. v. Ambach,* 669 F.2d 865 (2d Cir.1982) and *New Mexico Association for Retarded Citizens v. State of New Mexico,* 678 F.2d 847 (10th Cir.1982), cases involving large plaintiff classes in which exhaustion was excused. I believe both cases are distinguishable.

In *Jose P.,* the court found that exhaustion would have been futile because in a related case the department of education in New York City had failed over a five year period to develop administrative machinery capable of identifying and placing handicapped children, and the Commissioner of Education admitted that he would be unable expeditiously to process appeals of the thousands of students in the plaintiff class were they to pursue appeals.

These circumstances are not present in this case. There is no suggestion that the administrative machinery of the MPS is incapable of handling the number of appeals that might be filed in the future by the plaintiff class, and the procedural failures of the MPS in connection with the termination of day treatment centers were rectified by the preliminary injunction.

*New Mexico Association for Retarded Citizens* was a case brought under § 504 of the Rehabilitation Act of 1973, apparently because New Mexico is the only state which has elected not to receive funds under the EAHCA. See *Board of Education of the Hendrick Hudson Central School District v. Rowley,* 458 U.S. 176, 184, 102 S.Ct. 3034, 3039, 73 L.Ed.2d 690, 698 (1982). The defendants sought dismissal, claiming a failure to exhaust state administrative remedies. Rejecting this argument, the court emphasized that the suit claimed that

"the entire special education system offered by the state is infirm," and that the administrative remedies available did not provide for restructuring the state's entire educational system to comply with § 504. 678 F.2d at 851. Also, six school years had expired while the litigation had run its course, and further delay threatened to jeopardize the education of a large class of plaintiffs.

The *New Mexico* case is distinguishable because it arose under § 504 of the Rehabilitation Act of 1973, not under the EAHCA. The EAHCA has extensive procedural requirements designed to ensure "individualized consideration of and instruction for each child." *Rowley, supra,* 458 U.S. at 189, 102 S.Ct. at 3042, 73 L.Ed.2d at 701. Moreover, as indicated above, the challenge to the discontinuance of the day treatment placements is a matter reviewable in the administrative framework of Chapter 115.

The plaintiffs also point to the deficiencies in the notices which had been given to parents in connection with the termination of the day treatment programs as a factor demonstrating the futility of the administrative process, and rely upon cases in which futility has been found based on insufficient notices. *See, e.g., Hurry v. Jones,* 560 F.Supp. 500 (D.R.I.1983) and *Gregg B. v. Board of Education of the Lawrence School District,* 535 F.Supp. 1333 (E.D.N.Y.1982). However, this ignores the fact that in this case a preliminary injunction was entered to safeguard the parents' appeal rights because of the deficient notices and delayed placement offers. In other words, the plaintiffs prevailed on their claim that the day treatment centers should not be closed before the plaintiffs' procedural rights to appeal the change in placements have been complied with. The placements and individualized educational programs developed for the plaintiffs in the wake of the injunction were capable of review in the administrative procedures of § 115.81. The notice problem which supported the preliminary injunction does not support a finding that the state procedures are futile altogether.

Plaintiffs also support their futility argument by arguing that the remedy they seek, a continuance of day treatment funding, cannot be obtained through the administrative process because the funding of day treatment programs has been terminated. In some cases, exhaustion of remedies has been excused where the relief sought is not available from the administrative authorities. *See, e.g., Armstrong v. Kline,* 476 F.Supp. 583 (E.D.Pa.1979), *cause remanded on other grounds, Battle v. Pennsylvania,* 629 F.2d 269 (3rd Cir.1980) (hearing officers had no authority under state law to order special education programs in excess of 180 days per year).

This argument presupposes that the plaintiffs as a class are entitled under the EAHCA to day treatment services of the kind plaintiffs were receiving when this action was commenced. However, the Supreme Court's recent decision in *Board of Education of the Hendrick Hudson Central School District v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), makes clear that the EAHCA imposes no substantive level of education beyond a requirement that personalized instruction be provided and that sufficient, individually designed supportive services accompany the educational instruction to ensure that the student benefits from the special education.

Thus, the plaintiffs cannot argue that exhaustion of remedies would be futile simply because a particular type of program favored by them is not currently being funded. Given the "myriad of factors that might affect a particular student's ability to assimilate information presented in the classroom," *Rowley,* 458 U.S. at 198, 102 S.Ct. at 3047, 73 L.Ed.2d at 707, there are undoubtedly a variety of program designs appropriate to supply them with the education to which they are entitled under the Act. Presumably, if the multidisciplinary team evaluations of the plaintiffs reach a conclusion that the sole appropriate placement is a day treatment program, it will be the defendants' statutory duty to create or fund such a placement. However, exhaustion should not be excused merely because defendants do not currently fund a particular program favored by the plaintiffs. Rather, exhaustion should be required so that the court has the benefit of a record containing the school authorities' proposed individualized educational plan and placement for the student involved together with an explanation for its choice.

Furthermore, the notion that day treatment centers are the sole appropriate educational solution for the plaintiff class' needs seems contrary to the premise upon which the EAHCA rests. The EAHCA requires states receiving funds under the act to have policies which assure "all handicapped children the right to a free appropriate education." 20 U.S.C. § 1412(1). The term "free appropriate education" is defined in 20 U.S.C. § 1401(18) and (19) to require an "individualized education program," developed by a qualified representative of the local education agency at a meeting with the child's teacher, parents or guardian and, where appropriate, the child. The program is to be in a written document containing:

"(A) a statement of the present levels of educational performance of such child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved."

Thus, the EAHCA envisions individually-tailored educational plans for handicapped students such as the plaintiff children. For a federal court to interpret the EAHCA as requiring that day treatment centers be furnished for an entire class of handicapped children, each of whom has unique problems and is entitled to an individual-

ized education program, would seem contrary to the Act's approach of evaluating and furnishing educational programs to children on an individual basis. The advisability of imposing such a requirement on a school system is particularly questionable in this case given the lack of any record containing an evaluation of each child involved and a description of the proposed alternate programs made by qualified educational authorities who have far more expertise than does a federal court. *See, Tilton v. Jefferson County Board of Education,* 705 F.2d 800 (6th Cir.1983) and *Riley v. Ambach,* 668 F.2d 635, 640 (2d Cir.1981).

For these reasons, I believe that exhaustion of administrative remedies is a prerequisite to the pursuit of plaintiffs' EAHCA claim.

### B. *The Civil Rights Act and Rehabilitation Act Claims*

The plaintiffs also allege that the defendants violated their rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.,* in connection with the same allegations of the complaint upon which the EAHCA claim is alleged. Defendants argue that the EAHCA is the exclusive remedy for the plaintiffs' claims.

Although these claims have received considerable attention in the parties' briefs, in several recent decisions the Court of Appeals for this circuit has resolved some of the questions raised by the overlap of these claims. It is now clear that "the EAHCA provides the exclusive mechanism for challenging student placement decisions." *Timms v. Metropolitan School District of Wabash County, Indiana,* 718 F.2d 212 (7th Cir.1983). *See also, Doe v. Koger,* 710 F.2d 1209, 1213 (7th Cir.1983). Accordingly, a challenge to a school administration's placement decision cannot be made under the Rehabilitation Act or Civil Rights Act. *Timms* also makes clear that the EAHCA is the exclusive remedy whether the plain-

tiff is alleging a deficient educational *placement* or deficient *procedures* established by state and local school authorities in implementing the EAHCA.

Although the plaintiffs argue that their § 504 claim is independent of their EAHCA claim, it is clear from the complaint that both claims are premised upon the same factual allegations. Moreover, the cases upon which plaintiffs rely to pursue their § 504 claim independently, e.g., *Gary B. v. Cronin,* 542 F.Supp. 102 (N.D.Ill.1982), *William S. v. Gill,* 536 F.Supp. 505 (N.D. Ill.1982) and *S-1 v. Turlington,* 635 F.2d 342 (5th Cir.) *cert. denied,* 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981), were found "unpersuasive" by the court in *Timms.* Accordingly, insofar as the plaintiffs seek declaratory and injunctive relief, I believe that it cannot be based upon the Rehabilitation Act or the Civil Rights Act, and the case must proceed through the administrative channels required under the EAHCA. It also follows that the plaintiffs' federal and state constitutional claims to an appropriate education should be dismissed pending exhaustion of administrative remedies.

Plaintiffs *J.R.* and *K.D.* also seek compensatory and punitive damages against the defendants, jointly and severally, as a result of their alleged failure to provide plaintiffs with an appropriate education at public expense, their interference with the evaluation and placement process, and their denial of those plaintiffs' right to due process.[3]

The recent decisions of the Seventh Circuit Court of Appeals also give guidance on the availability of damages. In *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981), the plaintiffs sought damages under the EAHCA and 42 U.S.C. § 1983 for an incorrect placement decision by school authorities. The court held that a district court, in reviewing a state administrative decision concerning the appropriate educational program for a handicapped student under § 1415(e)(2), may not award compensatory

---

**3.** The class action certification was limited to the demands for injunctive and declaratory relief. Thus, the damage claims cognizable in this case are limited to those of the named plaintiffs.

damages or attorneys' fees absent special circumstances, injunctive relief being the appropriate relief in most cases. Section 1415(e)(2) empowers a district court to "provide such relief as the court determines is appropriate" when aggrieved parents bring a civil action under the EAHCA. In *Anderson* the court reached the conclusion that damages were normally unavailable under the EAHCA by finding in the language of the statute and its legislative history that the EAHCA was primarily a funding statute and that its procedural provisions were designed to ensure appropriate placements rather than to provide a damages remedy. However, the court envisioned "at least two exceptional circumstances in which a limited damage award might be appropriate." 658 F.2d at 1213. First, where parents seek compensation for costs of education incurred by them pending the outcome of the administrative process. Second, where the defendant "has acted in bad faith by failing to comply with the procedural provisions of section 615 [20 U.S.C. § 1415(e)(2)] in an egregious fashion" and the parents have incurred costs in unilaterally arranging for appropriate services elsewhere. 658 F.2d at 1213. In a footnote, the court observed:

> "Parents' costs of obtaining services that the school district was required to provide are the only appropriate money damages in these exceptional circumstances. In no event can we imagine that tort liability damages were intended." 658 F.2d 1213, n. 12.

The plaintiffs here do not allege that they incurred any costs of obtaining alternative services, but they observe that many parents cannot afford to purchase educational services unilaterally, and that limiting the exceptional circumstances under which damages may be appropriate to instances in which parents have paid for an educational program from their own pocket would provide a remedy only for the children of the wealthy. Though this is true, it seems hard to escape the court's conclusion given the clarity with which it was expressed.

The *Anderson* court also rejected the plaintiffs' claim for damages under 42 U.S.C. § 1983 (and for attorneys' fees under 42 U.S.C. § 1988) because it found the broader § 1983 relief to be inconsistent with the EAHCA, which does not contain a traditional damages remedy.

In *Timms v. Metropolitan School District of Wabash County, Indiana, supra,* the Court of Appeals extended the *Anderson* rationale to bar a claim for "compensatory education", i.e., injunctive relief requiring a school district to furnish a particular educational program in compensation for a violation of the EAHCA.

Although these cases make clear that damages are normally unavailable in cases of this kind, I do not believe that these cases fully cover the situation alleged by plaintiffs here. The plaintiffs complaint alleges that the defendants interfered with their evaluations and delayed their offers of placements, knowing of the imminent closing of the day treatment centers and without intending to maintain the plaintiffs in those placements pending any challenge to their removal from the day treatment centers, and did so to stop the plaintiffs from preventing the closing of the centers through administrative appeals. The preliminary injunction entered by the court in this case prevented this result.

Based upon these allegations, which have been taken as true for purposes of this motion, I do not believe it can be said as a matter of law that the plaintiffs would not be entitled to damages under 42 U.S.C. § 1983, although damages for tort liability *under the EAHCA* are certainly foreclosed by *Anderson*. Although I recognize that *Anderson* found damages under § 1983 to be a form of relief inconsistent with that afforded under the EAHCA, neither *Anderson* nor *Timms* dealt with a situation in which plaintiffs charged school authorities with intentionally placing obstacles in their path in order to prevent them from using the administrative remedies. The Second Circuit Court of Appeals in *Quackenbush v. Johnson City School District,* 716 F.2d 141 (2nd Cir.1983) held that

a plaintiff may seek damages from school authorities who altered a parental permission form for the sole purpose of denying their child a special education to which he was entitled. The court found § 1983 to provide a damages remedy under these circumstances:

"Section 1983 is a general remedial statute aimed at preventing lawlessness by state and local governments. Defendants' deliberate interference with procedural safeguards guaranteed by Congress for the purpose of depriving [the plaintiff] of special educational services necessary to provide him with free appropriate public education would constitute the deprivation of a right guaranteed under federal law within the meaning of § 1983. Section 1983 is available to enforce both statutory and constitutional rights. *Maine v. Thiboutot,* 448 U.S. 1 [100 S.Ct. 2502, 65 L.Ed.2d 555] (1980)." *Quackenbush,* 716 F.2d at 148.

The court in *Quackenbush* found its result consistent with *Anderson v. Thompson* because the plaintiff in *Anderson* had not been denied access to the state administrative machinery to challenge a placement decision. The *Anderson* case came before the District Court on review of a state administrative placement decision. *Id.,* at 149.

Under the *Quackenbush* decision, plaintiffs would presumably not have to prove the exceptional circumstances for which damages would be available under the *Anderson v. Thompson* case, which addresses the availability of damages under the EAHCA. Since for purposes of this decision it has been assumed that the plaintiffs' allegations concerning the events leading up to the closing of the day treatment centers are true, summary judgment should be denied as to the plaintiffs' damage claims under 42 U.S.C. § 1983.

## CONCLUSION

For the foregoing reasons, I recommend that the motion for summary judgment filed by Milwaukee Public Schools and joined in by the Superintendent of the Department of Public Instruction be granted with respect to the plaintiffs' claims for declaratory and permanent injunctive relief, and that those claims be dismissed, without prejudice, for exhaustion of state administrative remedies, and that the motion for summary judgment be denied with respect to the named plaintiffs' claims for damages under 42 U.S.C. § 1983.

The parties shall have a period of ten (10) days to serve and file with the court their objections to my recommendations. Replies to such objections may be served and filed with the court within five (5) days of service of such objections.

DATED at Milwaukee, Wisconsin, this 14th day of November, 1983.

/s/ David P. Lowe
David P. Lowe