Elizabeth BUFFOLINO, etc., et al., Plaintiffs,

v.

BOARD OF EDUCATION OF SACHEM CENTRAL SCHOOL DISTRICT AT HOLBROOK, Defendant.

No. CV 88–2473.

United States District Court, E.D. New York.

Jan. 23, 1990.

Costa & Bernstein by Thomas L. Costa, Hauppauge, N.Y., for plaintiffs.

Ingerman, Smith, Greenberg, Gross, Richmond, Heidelberger & Reich, Northport, N.Y. by Warren H. Richmond, III, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In this lawsuit, plaintiffs Elizabeth and Vincent Buffolino ("plaintiffs") allege that defendant Sachem Central School District ("defendant") failed to provide their daughter Georgianna with a free and appropriate education as provided by section 504 of the Rehabilitation Act of 1973 ("section 504"), as amended, 29 U.S.C. § 794 *et seq.,* and the Education of All Handicapped Children Act ("EHA"), 20 U.S.C. § 1400 *et seq.* Moreover, plaintiffs contend that defendant violated Georgianna's equal protection and due process rights, pursuant to the Fourteenth Amendment to the United States Constitution. Based on these allegations, plaintiffs seek damages and attorneys' fees under 42 U.S.C. §§ 1981, 1983 and 1985. Presently before the Court are defendant's motion for summary judgment and plaintiffs' motion for partial summary judgment, both pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, defendant's motion is granted.

## I. *Background*

Soon after Georgianna began kindergarten at the Cayuga Elementary School in the defendant Sachem Central School District, she took a series of tests along with her classmates in September, 1985. Because Georgianna performed poorly on the psychological and auditory portions of the Dallas Screening Test, her scores were reported to the District Committee on Special Education ("CSE"). After obtaining Mrs. Buffolino's written consent, the school provided Georgianna with weekly speech and language services.

On October 2, 1985, the school psychologist, the speech and language teacher, and Georgianna's kindergarten teacher initiated a "building referral" to the CSE in order to determine whether Georgianna was a handicapped child. However, school officials instituted this referral process without obtaining the requisite written consent of Georgianna's parents. In fact, when the CSE later learned that Mrs. Buffolino had not consented to an evaluation by the CSE of Georgianna, it nullified all of its prior recommendations and proceedings concerning Georgianna's classification as a handicapped child.

Toward the end of 1985, the school's speech teacher notified Mrs. Buffolino that Georgianna needed to undergo more testing by the school so that the CSE could properly evaluate her. However, Mrs. Buffolino refused to permit the school to test her daughter and instead decided to have Georgianna tested at her own expense by a psychologist in private practice. At Mrs. Buffolino's own request, the results of these tests were submitted to the School District in May.

On June 9, 1986, Mrs. Buffolino met with the school's psychologist and speech teacher, and was informed that their evaluation of her daughter indicated that Georgianna was in need of special services. They also informed Mrs. Buffolino that the CSE would have to classify Georgianna as a handicapped child in order for her to receive these services. Mrs. Buffolino was

uncomfortable with this idea and, moreover, did not want Georgianna to receive services which would interfere with her regular schooling. Consequently, Mrs. Buffolino offered to obtain these services privately at her own expense.

On June 18, 1986, the CSE meeting was held. Although Mrs. Buffolino never gave written permission to have Georgianna evaluated by the CSE, she attended and participated in the meeting nevertheless by submitting the psychological report and discussing her daughter's case. Once again, she stated her objection to having her daughter classified as a handicapped child and she offered to pay for private services at home after school hours. The CSE unanimously classified Georgianna as speech impaired, and assigned her to a regular class for the following school year to be supplemented by privately administered speech services which would be paid for by plaintiffs. The CSE made this determination in the absence of a medical and social history.

Sometime after this meeting, Mrs. Buffolino received a letter from Mr. DeSantolo, the School District's Assistant Superintendent for Pupil Personnel Services and Chairman of the Committee on Special Education, in which he advised her of her right to an impartial hearing. In later mailings he also sent her two comprehensive guides written in layperson's terms. These publications give detailed descriptions of the substantive rights of both handicapped children and their parents, as well as the procedural safeguards available to them in special education proceedings.

In early August, 1986, Mrs. Buffolino sent a letter to Mr. DeSantolo requesting an impartial hearing. At Mr. DeSantolo's suggestion, Mrs. Buffolino met with him personally later that month. They discussed her objection to having Georgianna categorized as a handicapped child and Mr. DeSantolo recommended that retesting Georgianna might lead to a change in her classification. Mrs. Buffolino implied she would turn over an updated evaluation of Georgianna to the CSE. She also notified Mr. DeSantolo that Georgianna would be attending parochial school beginning in September 1986. Finally, after Mrs. Buffolino reiterated her request for an impartial hearing, Mr. DeSantolo scheduled the hearing for October 6, 1986, which hearing was subsequently adjourned twice until October 28, 1986.

In the interim, the School District received the updated re-evaluation of Georgianna and a special CSE meeting was held to review Georgianna's classification and placement. Mrs. Buffolino attended this meeting as well. However, when Mr. DeSantolo discovered that Mrs. Buffolino never signed a written form consenting to the CSE's evaluation of her daughter, the meeting was adjourned immediately. Three days later Mr. DeSantolo sent Mrs. Buffolino a letter declaring all prior CSE actions null and void. He told her that he would destroy Georgianna's file if she so desired and included a form for her to fill out along with a self-addressed stamped envelope. In addition, he *recommended* the cancellation of the upcoming impartial hearing and encouraged her to contact him if she wished to discuss the matter any further.

Mrs. Buffolino "didn't like" Mr. DeSantolo's letter, apparently due to the explanation in the letter that all previous actions by the CSE were deemed null and void on the ground that Mrs. Buffalino never consented to the evaluation, and not on the ground that Georgianna did not possess a handicapping condition. Thus, Mrs. Buffalino never returned the form sent to her and Mr. DeSantolo subsequently destroyed Georgianna's file.

The impartial hearing officer also sent Mrs. Buffolino a letter in which he stated that he set aside the impartial hearing under the assumption that the matter had been resolved according to her wishes. He further stated that he would not reschedule an impartial hearing date unless she informed him to do so.

Mrs. Buffolino never contacted the hearing officer for a new date. In fact, she filed a complaint with the New York Regional Office for Civil Rights of the United States Department of Education ("OCR"),

which determined that the School District violated § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 *et seq.*, because it incorrectly evaluated and classified Georgianna without parental consent. Furthermore, the OCR's investigation revealed that the CSE failed to conduct its evaluation in a timely manner and based its findings on insufficient data. Lastly, the OCR determined that the School District destroyed Georgianna's file without her parents' consent.

On August 10, 1988, plaintiffs filed this lawsuit. The Court will first address defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which is based on the following grounds: (A) plaintiffs' failure to exhaust the available administrative remedies; (B) that the statute of limitations bars plaintiffs' claims; and (C) for the failure of the complaint to state a claim upon which relief can be granted. Since the Court finds summary judgment to be appropriate for defendants on the ground that plaintiffs have failed to exhaust necessary administrative procedures as a prerequisite to filing this action, the Court need not reach the remaining two issues concerning the statute of limitations and the sufficiency of the complaint, nor for that matter plaintiffs' motion for partial summary judgment on liability.

## II. *Exhaustion of Administrative Remedies Under the EHA*

In accordance with the Education to All Handicapped Act ("EHA"), 20 U.S.C. § 1400 *et seq.*, a state will receive federal funds as long as it provides handicapped children with "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, ... [and ensures] that the rights of handicapped children and their parents or guardians are protected." 20 U.S.C. § 1400(c); *Honig v. Doe*, 484 U.S. 305, 309, 108 S.Ct. 592, 596–97, 98 L.Ed.2d 686 (1988). To carry out these objectives, the EHA sets forth a sweeping scheme of particular procedural protections which permits parental involvement in all matters concerning the child's educational program, and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate. *Honig*, 484 U.S. at 311–12, 108 S.Ct. at 597–98.

The procedural protections enumerated in the EHA consist of the following:

> [T]he right to examine all relevant records pertaining to the identification, evaluation, and educational placement of their child; prior written notice whenever the responsible educational agency proposes (or refuses) to change the child's placement or program; an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; *and an opportunity for an "impartial due process hearing" with respect to any such complaints.*

*Honig*, 484 U.S. at 312, 108 S.Ct. at 598 (emphasis added) (citing 20 U.S.C. § 1415(b)(1), (2)).

In the event that a party is dissatisfied with or aggrieved by the results of the impartial hearing, that party may obtain additional administrative review by the state educational agency. 20 U.S.C. § 1415(c). If a party has exhausted both of these administrative remedies, namely the impartial hearing and the administrative appeal, and that party remains aggrieved, a civil lawsuit may be commenced in either state court or federal district court to contest the evaluation and placement of the handicapped child. 20 U.S.C. § 1415(e)(2); *Honig*, 484 U.S. 312, 327, 108 S.Ct. at 598, 606; *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir.1987); *Riley v. Ambach*, 668 F.2d 635, 638 (2d Cir.1981). *See also* N.Y. Educ. Law § 4404 (McKinney 1990).

It is to be noted that the parent or guardian of a handicapped child is not limited to an action pursuant to the EHA in challenging the action or inaction of an educational agency. Congress has specifically provided that aggrieved parties may seek redress under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, 42 U.S.C. § 1983 and the Constitution as well. 20 U.S.C. § 1415(f); *Tirozzi*, 832 F.2d at 755

(citations omitted). Nevertheless, if the action is brought under these other laws, plaintiffs "are first required to exhaust the EHA's remedies to the same extent as if the suit had been filed originally under the EHA's provisions." *Tirozzi*, 832 F.2d at 756 (citations omitted). Therefore, plaintiffs must pursue an impartial hearing and an administrative appeal before filing suit under section 504, § 1983 and the Constitution if the action could have been brought under the EHA. *Id.*

■ However, the Second Circuit has maintained that the exhaustion doctrine "is not an inflexible rule." *Id.; Quackenbush v. Johnson City School District*, 716 F.2d 141, 147–48 (2d Cir.1983), *cert. denied*, 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984). The utilization of the administrative procedural safeguards listed in the EHA is not required in certain instances where:

(1) it would be futile to use due process procedures …;

(2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law;

(3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)….

*Tirozzi*, 832 F.2d at 756 (citations omitted); *see also J.G. v. Rochester City School District Board of Education*, 830 F.2d 444, 447 (2d Cir.1987); *Vander Malle v. Ambach*, 667 F.Supp. 1015, 1029 (S.D.N.Y. 1987) (citing *Riley*, 668 F.2d at 640–641).

■ Therefore, the parents or guardians of a disabled child may institute a civil action pursuant to the EHA without an impartial hearing or an administrative appeal where the state is to blame for the failure of plaintiffs to exhaust their administrative remedies because it somehow deprived them of their right to proper notice and a hearing in accordance with due process. *J.G.*, 830 F.2d at 447 (citing *Quackenbush*, 716 F.2d at 147–48). Plaintiffs are also excused from the exhaustion requirement where sufficient remedies are not reasonably ascertainable, *J.G.*, 830 F.2d at

447 (citing *Jose P. v. Ambach*, 669 F.2d 865, 869 (2d Cir.1982)), or where the allegations would not or could not have been resolved through an administrative proceeding. *J.G.*, 830 F.2d at 337 (citing *McNeese v. Board of Education*, 373 U.S. 668, 674–75, 83 S.Ct. 1433, 1437–38, 10 L.Ed.2d 622).

With these principles in mind, the Court now turns to the case at bar.

### III. *Discussion*

As stated earlier, defendant School District seeks an order granting summary judgment on the ground that plaintiffs failed to exhaust available administrative remedies. More specifically, defendant argues that plaintiffs cannot maintain a civil action in this court due to their failure to procure an impartial hearing pursuant to 20 U.S.C. § 1415(b)(2). *Honig*, 484 U.S. at 326–27, 108 S.Ct. at 605–06; *Tirozzi*, 832 F.2d at 756.

Although plaintiffs concede that there is an exhaustion requirement, they contend that they are excused from instituting administrative remedies on the grounds that: (1) the School District's alleged violations of procedural protections as guaranteed by the EHA rendered administrative review all but meaningless, and (2) plaintiffs could not obtain adequate relief in an impartial hearing or a subsequent administrative appeal. *Honig*, 484 U.S. at 327, 108 S.Ct. at 606 (citations omitted); *Quackenbush v. Johnson City School District*, 716 F.2d 141, 147–48 (2d Cir.1983), *cert. denied*, 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984); *J.G.*, 830 F.2d at 447; *Tirozzi*, 832 F.2d at 756 (citations omitted). Plaintiffs further contend that their constitutional claims of equal protection and due process violations are not subject to the exhaustion requirement. For the reasons that follow, the Court disagrees and finds that plaintiffs were required to exhaust the available administrative remedies before attempting to maintain a civil action in this Court.

■ Essentially, plaintiffs blame defendant School District for the failure to obtain an impartial hearing or an administra-

tive appeal. In particular, they claim that the School District violated certain procedural safeguards listed in 20 U.S.C. § 1415. First, plaintiffs claim that they were never "fully informed," as required under 20 U.S.C. § 1415(b)(1)(D), that they could seek an impartial hearing to determine whether the School District violated Georgianna's due process rights and improperly classified her as a handicapped child, despite the CSE's determination on October 3, 1986 that all previous actions were deemed "null and void." Plaintiffs assert that neither the CSE chairman nor the impartial hearing officer ever expressly communicated the right to an impartial hearing. *Tirozzi*, 832 F.2d at 756 (citing *Cain v. Yukon Pub. Schools*, 775 F.2d 15, 20 (10th Cir.1985)); *Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 634 (4th Cir.1985) (both noting importance of notification requirements). Due to the nature of the evidence at hand, the Court finds that the School District fully informed plaintiffs of their right to continue with an impartial hearing.

Firstly, the School District sent Mrs. Buffolino two guidebooks, *Committee on the Handicapped Guidebook* and *A Parent's Guide to Special Education*, which fully informed plaintiffs of their right to pursue an impartial hearing. Both publications list, describe and explain in concise laypersons' terms the substantive and procedural due process rights of disabled children and their parents or guardian. More specifically, *A Parent's Guide to Special Education* gives a comprehensive definition of an impartial hearing, lists the parties involved and their respective roles, advises parents of their right to counsel and reminds parents to maintain all copies of documents pertaining to the child's case. This guide also enumerates "due process assurances" many times over and includes checklists and suggestions for parental participation.

Most importantly, however, this publication actually sets forth in plain terms the reasons why a parent should request an impartial hearing. For example, the guide suggests that impartial hearings are warranted where parents disagree with a recommendation of the CSE, or where the CSE fails to evaluate the child within thirty days (i.e. a timely manner). In fact, plaintiffs assert the very same allegations and in a letter written to the CSE Chairman on August 2, 1986, Mrs. Buffolino acknowledged that she received one of the guides. She also stated that she would soon request an impartial hearing in accordance with "proper procedures." Therefore, the Court is persuaded that the School District fully informed plaintiffs of their right to pursue an impartial hearing and that plaintiffs knew they should have obtained one under the circumstances. *Vander Malle*, 667 F.Supp. at 1031.

Plaintiffs also assert that the School District frustrated their attempt at having an impartial hearing by unilaterally cancelling the hearing and wrongfully destroying Georgianna's file. The Court finds no merit in these assertions. Shortly after the October 2, 1986, CSE meeting, the CSE Chairman sent Mrs. Buffolino a letter which stated that all prior CSE actions were deemed "null and void." Thus, the CSE's recommendations concerning Georgianna's evaluation, classification and placement were abolished as if the findings, suggestions and actions never occurred. Since Mrs. Buffolino had originally scheduled the impartial hearing because she objected to the CSE's classification of Georgianna, the CSE Chairman merely recommended the cancellation of the impartial hearing, now that Georgianna was no longer classified as a handicapped child. Presumably he reasonably thought that there was no longer a need for the meeting. However, the CSE Chairman specifically stated that Mrs. Buffolino should contact him if she wished to discuss the matter further. If Mrs. Buffolino still wished to pursue the impartial hearing, she should have contacted him thereafter.

The impartial hearing officer also sent Mrs. Buffolino a letter in which he stated that it was his understanding that the matter had been resolved and he would not reschedule an impartial hearing date unless she informed him otherwise. Once again, plaintiff had a chance to pursue an impartial hearing and chose not to. Mrs. Buffoli-

no should have contacted the hearing officer if the matter was not resolved to her satisfaction.

Although it is not clear from the papers, it appears that plaintiffs further contend that even if they had been aware of their right to an impartial hearing, it would have proved futile because the CSE Chairman egregiously destroyed Georgianna's file without the consent of her parents. If this were the case, plaintiffs would be excused from the exhaustion requirement, and be entitled to maintain this action. *See J.G.*, 830 F.2d at 446; *Quackenbush*, 716 F.2d at 147–48. However, this was not the case. In the same letter which informed Mrs. Buffolino that all prior CSE proceedings were deemed null and void, the CSE Chairman notified Mrs. Buffolino that he would destroy Georgianna's file unless she told him otherwise by filling out a form and returning it in a self-addressed stamped envelope. *See* Letter from R. DeSantolo to plaintiff, dated October 6, 1986. Stating that she "did not like" the CSE Chairman's letter, Mrs. Buffolino never responded to it and the CSE Chairman subsequently destroyed Georgianna's file. Therefore, it can be reasonably inferred that Georgianna's file was destroyed due to Mrs. Buffolino's failure to correspond, and not because the CSE acted egregiously. Consequently, it would not be fair for plaintiffs to bypass the exhaustion requirement on this ground.

The Court further notes that although Mrs. Buffolino never fully executed formal consent to the CSE evaluation of Georgianna, she clearly participated in the evaluation and indicated that she intended to comply with the proper procedures as they were described to her. Upon realizing that Mrs. Buffolino never actually signed the consent form, defendant destroyed the findings as if they were never created. In short, it appears that defendant attempted to act in the child's best interest, but was powerless to do so without the consent of plaintiffs. Such a scenario is not one which should serve as the basis for a violation of section 504 of the Rehabilitation Act. *See United States v. University Hospital of the State University of New York*, 575 F.Supp. 607, 614 (E.D.N.Y.1983), *aff'd*, 729 F.2d 144 (2d Cir.1984), *aff'd, sub nom.*, *Bowen v. Amer. Hospital Ass'n*, 476 U.S. 610, 106 S.Ct. 2101, 90 L.Ed.2d 584 (1986).

In yet another attempt to convince the Court to permit plaintiffs to bring this suit in spite of their failure to exhaust administrative remedies, plaintiffs argue that these administrative proceedings could not have afforded them appropriate relief, namely monetary damages and attorney's fees. *See Honig*, 484 U.S. at 327, 108 S.Ct. at 606; *Tirozzi*, 832 F.2d at 756–57; *J.G.*, 830 F.2d at 447. Once again, the Court is unpersuaded. As stated earlier, the Second Circuit has held that when a suit which could have been brought under the EHA is instead brought under an alternative law, plaintiffs must first exhaust the EHA's procedures to the same extent as though the action had been originally brought under the EHA. *J.G.*, 830 F.2d at 446; *Tirozzi*, 832 F.2d at 756 (citations omitted). Clearly, this point of law is even more applicable in the case at bar since plaintiffs' claims are brought in conjunction with the EHA. Instead of filing a complaint with the OCR which investigated the School District and ultimately found that the School District was at fault, plaintiffs should have brought their complaint to an impartial hearing officer, who could have made findings of fact in a more adjudicative forum. 20 U.S.C. § 1415(b)(2); *see Delamater v. Schweiker*, 721 F.2d 50, 53–4 (2d Cir.1983).

If the Court were to hold that plaintiffs in this case are excused from exhausting their remedies because adequate relief could not be obtained, plaintiffs could avoid administrative procedures merely by asking for relief that administrative authorities could not grant. Furthermore, the Court would discourage such tactics in light of the importance of administrative proceedings. Key reasons for requiring the exhaustion of administrative remedies are to "[allow] expert administrators to focus and illuminate the issues to be considered by the courts and [to provide] the state an opportunity to correct official abuse without the need to resort to costly and expensive litigation...." *Vander*

*Malle,* 667 F.Supp. at 1029 (citing *Riley v. Ambach,* 668 F.2d 635 (2d Cir.1981)). *Accord Doe By and Through Doe v. Smith,* 879 F.2d 1340, 1343–44 (6th Cir.1989); *Cox v. Jenkins,* 878 F.2d 414 (D.C.Cir.1989).

In sum, this Court holds that plaintiffs inexcusably failed to exhaust administrative remedies available to them pursuant to 20 U.S.C. § 1415(b)(2), (c) on the grounds that: (1) defendants fully informed plaintiffs of their procedural rights; (2) defendants did not egregiously destroy the child's file, thereby precluding any meaningful administrative review; and (3) plaintiffs must exhaust their administrative remedies to the fullest extent under the EHA, despite having brought other claims as well. The Court further notes that plaintiffs' motion for partial summary judgment on the issue of liability alone is inapposite to a determination that they have failed to exhaust the available administrative remedies. Consequently, the Court need not reach the issues addressed in plaintiffs' motion.

## CONCLUSION

 It is well established that the Court may grant a motion for summary judgment only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). When deciding a summary judgment motion, the court must not "weigh the evidence and determine the truth of the matter." *Winant v. Carefree Pools,* 709 F.Supp. 57, 59 (E.D.N.Y.1989). Rather, the judge must ascertain whether a genuine triable issue exists. If the movant establishes its burden of proof that there is no issue as to any material fact, summary judgment may be granted. However, in reaching its decision, the Court must construe all ambiguities and inferences in favor of the opposing party. *Id.*

The Court finds that plaintiffs failed to exhaust the appropriate administrative procedures. Plaintiffs have failed to raise a genuine issue as to whether they are excused from the exhaustion requirement. Accordingly, defendant's motion for summary judgment is granted. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.