Bradley MEEHAN, Plaintiff,

v.

PATCHOGUE–MEDFORD SCHOOL
DISTRICT, Defendant.

No. CV 98–1271.

United States District Court,
E.D. New York.

Dec. 2, 1998.

**130**

Leeds & Morelli by Rita S. Menchel, Carle Place, NY, for Plaintiff.

Ingerman Smith, L.L.P. by Warren H. Richmond, Northport, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff, Bradley Meehan (the "plaintiff" or "Meehan") commenced this action against the Patchogue Medford School District (the "defendant" or the "School") pursuant to the Individuals with Disabilities Education Act (20 U.S.C. § 1400 *et seq.*) ("IDEA"), the Americans with Disabilities Act (42 U.S.C. § 12101) ("ADA"), the Rehabilitation Act of 1973 (29 U.S.C. § 794), and the New York State Executive Law (Human Rights Law § 290 *et seq.*). The plaintiff, who suffers from Attention Deficit Disorder ("ADD"), alleges that the School failed to properly educate or adequately provide the necessary skills required to meet the needs of his disability. As a result, the plaintiff asserts his rights were violated under IDEA, the ADA, the Rehabilitation Act, and the New York State Executive Law.

Presently before the Court is the defendant's motion to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), on the ground that the plaintiff has not exhausted his administrative remedies as set out in IDEA section 1415(f). As a result, the defendant submits that the IDEA, ADA, and Rehabilitation Act claims should be dismissed. In addition, the defendant argues that if the federal claims are dismissed this Court should decline to exercise supplemental jurisdiction and dismiss the state law cause of action. On the other hand, the plaintiff asserts that his failure to exhaust the appropriate administrative remedies does not warrant dismissal because his efforts to obtain such administrative relief was thwarted by the School. Therefore, the plaintiff claims that the exhaustion provisions of IDEA are inapplicable and that the federal and state causes of action should not be dismissed.

## I. BACKGROUND

The facts as set-forth below are taken from the plaintiff's complaint. The plaintiff began his education at the Patchogue–Medford School District in 1984 and continued until his high school graduation in June 1997. While in elementary school the plaintiff was an honor student and was enrolled in a program for gifted students. In the sixth grade the plaintiff began to display behavioral problems that became progressively worse as he entered junior high and then high school. The plaintiff's grades declined dramatically as he entered high school, he was involved in fights with other students and was suspended from school numerous times.

While in high school the plaintiff made several visits to the nurse to complain about migraine headaches and was prescribed medication for this ailment. In February 1995, the plaintiff's English teacher, Mr. Quinn, suggested that the plaintiff was suffering from a learning disability and that he may need special services. On February 10, 1995, the plaintiff's parents met with his teachers and guidance counselor to discuss his grades and behavioral problems. At that meeting, the plaintiff's parents suggested that their son may need special services and asked whether he could be tested for ADD or other learning disabilities. It is alleged by the plaintiff that his guidance counselor, Marsha Preston, laughed at the suggestion and did not perform any tests on the plaintiff.

In January 1996, the plaintiff's junior year in high school, he was diagnosed with ADD by his psychologist, Dr. Keith Moss. The medication Ritalin was prescribed by psychiatrist Dr. Mitchell Banks and, although the school nurse was allegedly instructed to administer the Ritalin to the plaintiff daily, she

failed to do so for approximately three months.

In February 1996, the School agreed to perform tests on the plaintiff to discover the extent of his disability and whether he required special services. In April of 1996 the plaintiff was so tested. The evaluation report indicated that an "informing conference" was scheduled for April 29, 1996 to discuss the results of this test. However, the plaintiff's parents claim that they were not informed of the results until June 20, 1996—after the school year had ended. Consequently, the "informing conference" never took place. The plaintiff claims that copies of the report were not forwarded to Dr. Banks, the School's Committee of Special Education ("CSE"), or the plaintiff's high school, despite an indication in the reports that copies had been forwarded. As a result, the plaintiff did not receive any special services or classes during his junior year.

The results of the examination indicated that the plaintiff suffered from a serious deficiency of his visual motor skills. After viewing the results of the April test, the plaintiff's psychologist, Dr. James Peterson, suggested that the plaintiff receive special help at school. In September 1996, the plaintiff's parents allegedly requested a meeting with the CSE to discuss the results of the exam and what special services were required. A meeting was scheduled for February 5, 1997, only four months prior to the plaintiff's graduation from high school.

At the February 5th meeting, the CSE acknowledged that the plaintiff suffered from ADD and other learning and emotional disabilities. Accordingly, the Chairperson of the CSE allegedly apologized for the School's mishandling of the plaintiff's case and agreed to perform other tests. The CSE recommended that the plaintiff receive "resource room" five times per week as provided in the Individual Education Program ("IEP"). No other services were recommended or provided. The CSE further recommend that a transition meeting be scheduled "ASAP." The meeting was originally scheduled for February 12, 1997, but was canceled by the CSE and rescheduled for February 17, 1997.

The day after the February 5th meeting, the plaintiff gave the School a prescription from Dr. Banks which requested that further testing be performed. Those tests were not performed until March 13, 1997 despite the plaintiff's claim that he had called the School's Director of Special Education to inquire when the tests would be performed. On April 7, 1997, two months before the plaintiff's graduation from high school, the plaintiff's parents wrote a letter requesting an impartial hearing with the school to discuss appropriate special education. In a letter dated April 9, 1997, the School provided the plaintiff with a copy of the occupational therapy evaluation performed on March 13, 1997, and scheduled a meeting before the CSE for April 16, 1997.

At the April 16, 1997 meeting, the plaintiff's parents received an Office of Special Education recommendation form in which the plaintiff was approved to receive occupational therapy two times a week. On May 23, 1997, the plaintiff, now in his last month of high school, began receiving therapy. In total, the plaintiff received six sessions of therapy and was allegedly informed by the therapist that she was not the appropriate person to help him. In addition, the plaintiff contends that the therapy sessions consisted only of reading passages from books and newspapers "out loud" and summarizing some of the passages in writing.

In addition to the lack of guidance from the therapist, the plaintiff also claims that the "resource room" teacher never gave him instructions or tasks to perform and that he was not provided with alternative testing techniques described in his IEP until April 16, 1997. The plaintiff graduated from Patchogue–Medford High School in June of 1997.

## II. DISCUSSION

### A. *Standard of Review—Fed.R.Civ.P. 12(b)(1) Standard*

According to the Second Circuit, "[i]n determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a

right to recover under the laws of the United States." *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1055 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994) (quoting *Goldman v. Gallant Secs. Inc.,* 878 F.2d 71, 73 [2d Cir. 1989]). Dismissal pursuant to Fed.R.Civ.P. 12(b)(1) is warranted only where the plaintiff's complaint is "so completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). When addressing a motion to dismiss, the Court must accept the allegations of the complaint as true, and construe all reasonable inferences in favor of the plaintiff. *Connell v. Signoracci,* 153 F.3d 74 (2d Cir.1998); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991).

## B. *Exhaustion of Administrative Remedies Under IDEA*

The purpose of IDEA is to assure that all children with disabilities have available a free appropriate public education which emphasizes special education and related services designed to meet their unique needs and to assure that the rights of children with disabilities and their parents or guardians are protected. *See* 20 U.S.C. § 1400(c); *Honig v. Doe,* 484 U.S. 305, 309, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Heldman v. Sobol,* 962 F.2d 148, 150 (2d Cir.1992); *Buffolino v. Board of Educ. of Sachem Cent. Sch. Dist. at Holbrook,* 729 F.Supp. 240, 244 (E.D.N.Y. 1990). Handicapped children within the meaning of the IDEA are "mentally retarded, hard of hearing, deaf, speech or language impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, or other health impaired children, or children with specific learning disabilities, who by reason thereof require special education and related services." 20 U.S.C. § 1401(a)(1). For the purpose of this motion, there is no contention by the School that the plaintiff is not handicapped within the meaning of the IDEA.

Congress ensured implementation of these objectives through a scheme of procedural protections which permit parental involvement in the educational program and allows parents to obtain administrative and judicial review of decisions which they find inappropriate. *See* 20 U.S.C. § 1415(b), (c) and (e); *Honig,* 484 U.S. at 311–12, 108 S.Ct. 592; *Heldman,* 962 F.2d at 151; *Buffolino,* 729 F.Supp. at 244. If the educational program is found to be inappropriate, the statute provides the parents or guardian with an opportunity for an impartial due process hearing which is conducted by the State educational agency or by the local educational agency, as determined by State law or the State educational agency. *See* 20 U.S.C. § 1415(b)(2); *Honig,* 484 U.S. at 312, 108 S.Ct. 592. If the hearing is conducted by a local educational agency or an intermediate educational unit, any party aggrieved by the findings and decision rendered may appeal to the State educational agency which shall conduct an impartial review. *See* 20 U.S.C. § 1415(c). The Second Circuit has analyzed IDEA as follows:

[r]ather than detailing the precise substantive rights applicable to all affected children, Congress opted for individually tailored programs—programs crafted by parents and educators working together to determine what is appropriate for each child. Congress recognized that such an unconventional approach would require extensive procedural safeguards to protect the educational rights of children with disabling conditions. Thus the scope of these procedural protections—which this case requires us to examine—must be determined in light of their role in ensuring the appropriate application of the Act.

*Heldman,* 962 F.2d at 150.

Under IDEA, parents may seek review of any determination relating to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such a child." 20 U.S.C. § 1415(b)(1)(E). However, prior to seeking judicial review in either state or federal court, initial review procedures at the state or local level must be exhausted. *Id.* at § 1415(b)(2), 1415(e)

In New York State the IEP is developed by a CSE whose members are appointed by the board of education or trustees of the

school district. *See* 16 N.Y. Education Law § 4402(1)(b)(1). If the recommendation of the CSE is not acceptable to the parent or guardian, the board of education can appoint an impartial hearing officer to hear the appeal and make recommendations to the board. *Id.* at § 4404(1). Parents of a handicapped child have a right to a determination by a hearing officer within 45 days after receipt of a request for a hearing. 34 C.F.R. §§ 300.506 and 300.512. The determinations of the impartial hearing officer may then be reviewed and modified by a state review officer. 16 N.Y. Education Law § 4404(2). If the aggrieved party has exhausted their administrative remedies, they may appeal those decisions in a civil suit in either state court or federal district court. *See* 15 U.S.C. § 1415(e)(2). Here, there is no question that the plaintiff failed to exhaust the two levels of review available to him; namely, the impartial hearing and the review by the State Commissioner of Education.

 It should be noted, however, that the exhaustion doctrine is not an inflexible rule. Under certain circumstances, exhaustion of administrative remedies are not necessary before the commencement of a civil action. *See Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141, 148 (2d Cir.1983) *cert. denied*, 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir.1987); *Buffolino v. Board of Educ.*, 729 F.Supp. 240, 245 (E.D.N.Y.1990). The situations where exhaustion of the due process and review procedures are not required before commencement of a civil action include: (1) where it would be futile to use the due process procedures; (2) where an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) where it is improbable that adequate relief can be obtained by pursuing administrative remedies. *See Tirozzi*, 832 F.2d at 756; *Buffolino*, 729 F.Supp. at 245. In addition, the parents of a disabled child can also bring civil proceedings without first exhausting administrative remedies, where the state is to blame for the failure of the plaintiffs to exhaust their administrative remedies because it somehow deprived them of their right to proper notice and a hearing in accordance with due process. *See Quackenbush*, 716 F.2d at 147–48; *Buffolino*, 729 F.Supp. at 245.

### 1. *The Standards Applied*

 It is undisputed that the plaintiff failed to exhaust his administrative remedies. The only issue for the court to resolve, therefore, is whether the plaintiff's failure to exhaust administrative remedies is excusable. The plaintiff claims that the Board of Education failed to grant his request for an impartial hearing. In support of his contention, the plaintiff notes that on April 7, 1997 the plaintiff's father wrote to the Board of Education formally requesting an impartial hearing. Specifically, the letter stated:

> In accordance with the procedures for an impartial hearing, *described in the enclosure re: due process rights, included with* Mr. Sperl's letter dated 3/18/97, please accept this as a written request for an impartial hearing because we do not agree with the school district regarding the provision of an appropriate special education program for our child.

As noted previously, the parents of a handicapped child have a right to a determination by a hearing office within 45 days after receipt of a request for a hearing. Assuming that the School received the request, as the Court will on a motion to dismiss, an impartial hearing should have been conducted in late May 1997. In further opposition to the School's motion to dismiss, the plaintiff contends that on April 16, 1997 a second request was made at the CSE meeting for an impartial hearing. Further, on May 6, 1997 the plaintiff's attorney sent a letter seeking an impartial hearing which stated: "Additionally, we are seeking the impartial hearing that was requested by Mr. Meehan in his April 7, 1997 letter. Again due to the closeness in time to the close of the school year, time is of the essence." The plaintiff claims, therefore, that the denial of his repeated requests for an impartial hearing is essentially a denial of his due process rights which requires the Court to exercise jurisdiction in the action despite the failure to exhaust administrative remedies.

If the Court were to grant the defendant's motion to dismiss, it would implicitly reward the defendant's for ignoring the repeated requests by the plaintiff for an impartial hearing—an outcome the Court declines to endorse. Therefore, the Court finds that while the plaintiff failed to exhaust his administrative remedies prior to commencement of this action, the failure was excusable as the defendant apparently prevented the appropriate administrative remedies from taking place. Exhaustion of administrative remedies will be dispensed with "[w]here the State is to blame for the failure of plaintiffs to exhaust their administrative remedies because it somehow deprived them of their right to proper notice and a hearing in accordance with due process." *Buffolino*, 729 F.Supp. at 245; *see also J.G. v. Board of Education of Rochester City School Dist.*, 830 F.2d 444, 447 (2d Cir.1987). With regard to the defendant's motion to dismiss, the Court finds that the plaintiff's failure to exhaust his administrative remedies prior to commencement of this action is excusable.

### C. *The Remaining Claims*

While it is well settled that the failure to exhaust administrative remedies provided by IDEA requires dismissal of claims brought under the ADA and the Rehabilitation Act of 1973, *see Hope v. Cortines*, 872 F.Supp. 14 (E.D.N.Y.1995) *aff'd.*, 69 F.3d 687 (2d Cir. 1995), the Court has found that the failure by the plaintiff to exhaust his administrative remedies was excusable. Therefore, the Court declines to dismiss the claims under the ADA and the Rehabilitation Act of 1973. Similarly, as the federal claims have not been dismissed, the Court declines to dismiss the supplemental state claims alleging a violation of the New York State Executive Law. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); 28 U.S.C. § 1367.

### III. CONCLUSION

Therefore, after reviewing the submissions of the parties and for the reason set forth above, it is hereby

**ORDERED** that the motion by the Patchogue–Medford School District to dismiss the complaint pursuant to Rule 12(b)(1) of the Fed.R.Civ.P. is **DENIED.**

**SO ORDERED.**